## LEWIS D. ROBERTS *vs.* CITY OF BOSTON.

Suffolk.    March 12, 1889. — June 18, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Waiver of Exception — Eminent Domain — Land Damages — Evidence —
Experts — Cross-examination — Re-examination.*

If evidence offered at a trial is objected to and excluded by the presiding judge as incompetent, and an exception is taken to this ruling, whereupon the objection is withdrawn, and the judge for that reason admits it, the party offering the evidence, who then declines to introduce it, has no ground of exception.

On the assessment of damages for the taking by a city of land with a building thereon for a court-house, evidence was put in by the owner of the cost of repairs and alterations made by him in the building. An expert for the city,

after testifying that he examined the building after it was partially taken down, describing its then condition, and that he formed an opinion from what he saw of the cost of both, was permitted to give his opinion as to what would have been a fair cost for the repairs and alterations which he saw. *Held*, that the evidence was properly admitted.

This expert, who for the first time gave his opinion of the value of the estate on cross-examination, after being asked various questions, also on cross-examination, as to the estate and one adjoining it with a view of showing that the estate in question was much the more valuable, was then asked by the owner, to show that his opinion was worthless, if he did not make up his mind that the adjoining estate was worth a certain sum, which was larger than that named by him as the value of the estate in question. *Held*, that the question was properly excluded.

Evidence offered by the city of the sales of neighboring estates similar to the estate in question, and similarly situated, one sale being about five months and the other more than twenty months after the taking, was *held* to be properly admitted.

The purchaser of one of such similar estates, who was an expert, and was called as a witness by the owner, testified that he had fixed a maximum limit to be bid therefor by his agent, and the owner then offered to show what this limit was, and that it exceeded the price paid, and that such purchaser was, on the day of the sale, offered a large advance on that price, and also what in his opinion was the value of such neighboring estate. *Held*, that the evidence was clearly incompetent.

This purchaser, who was a counsellor at law, testified in chief that he bought this estate in order to have a place to stop after the court-house was started, and, being asked on cross-examination his purpose in buying, and whether he did so because the court-house had been located near by, said that he bought it for an office, and because he had been near there many years and was wonted to the place; he was then asked, on re-examination, if all the object he had in buying was simply for an office, and whether the fact of the city's taking the court-house site was the only reason. *Held*, that these questions and the re-examination on the subject were properly excluded.

PETITION to the Superior Court for a jury to assess the petitioner's damages for the taking of land in Boston for a new court-house. Trial before *Pitman*, J., who allowed a bill of exceptions, which so far as material was as follows.

The petitioner's property consisted of a house and lot containing 3,032 square feet, and situated on the easterly side of Somerset Street, with a frontage of thirty-seven feet directly opposite the easterly end of Ashburton Place, which is forty feet wide and leads off from the westerly side of Somerset Street at that point. The petitioner's evidence tended to show that his property was worth when taken, on August 3, 1885, from $55,000 to $65,000, and that of the respondent that it was worth from $35,000 to $38,000. The estate was shown to have

peculiar advantages over other estates in the vicinity in location, being at the highest point on Somerset Street, the land and street descending each way from the same, and in having light and sun, and a wide outlook in the rear, and in upper stories especially, and in front down Ashburton Place.

There was evidence that the petitioner bought the property in 1880, at an auction sale, for $21,700, and that he spent $17,000 in repairs and in remodelling the house, which amount was wisely and judiciously expended; that in so doing he changed it from a dwelling-house to be occupied by one family to a house with separate suites of rooms on each floor, the same being made four stories in front and six in the rear, and adapted to first-class tenants.

Phineas A. Stone, an expert in real estate, testified that for many years he had been acquainted with the property, and with that in the vicinity; that, a few days before the petitioner bought it, he carefully examined and estimated the value of the property in question as the agent of a third person. The petitioner asked him, and proposed to show by him, what, in his judgment and opinion, the property was fairly worth at the time of the sale to the petitioner. The respondent objected, and the judge excluded the evidence as incompetent, and the petitioner excepted, whereupon the respondent's counsel said, "I will withdraw my objection. I don't want an exception." The petitioner's counsel then said, "I will not take it as a favor, after a ruling that it is incompetent evidence." The judge did not change his ruling that the evidence was incompetent, but said the evidence could be put in, as the respondent had withdrawn his objection; but the counsel for the petitioner then, and for the reason stated, declined to have the question answered. This occurred in the presence and hearing of the jury.

The respondent called, as an expert in real estate, Thomas J. Whidden, one of the court-house commissioners, and he testified that as such commissioner he examined the petitioner's house after the work of taking it down had begun; that all the heating apparatus and plumbing had been taken out, as well as the chimney-pieces and portions of the partitions, the city having sold all but the brick and stone in the building; that he examined the building as to what had been done by the petitioner,

and in reference to the amount of repairs that had been made; that he formed an opinion from what was left as to what there had been, so as to judge of the rest, but had not looked at the plans of the building. He was then asked this question: "What, in your opinion, would have been a fair cost for the repairs and alterations which you saw there?" The judge admitted the question, against the petitioner's objection, and the witness answered, "Ten thousand dollars was the sum I fixed as what it might cost to change it." The petitioner excepted.

Whidden was not asked by the respondent, and did not testify in chief as an expert as to the value of the estate, land, or buildings, except as above. He testified on cross-examination, that, in estimating what it would cost to do the work of remodelling and making the changes in the house, he arrived at a general estimate of their cost; that he thought it was his duty as a commissioner to estimate the damages, and he examined the property with that view, and made up his mind that the petitioner's estate was worth $40,000. He was then asked whether he did not subsequently form the opinion that it was worth $43,000, and was allowed to answer the question under objection: "Well, for the purpose of settlement, I don't know but I did. I can't remember." Whidden, on further cross-examination, said that he estimated the value of the land and that of the building separately; that he looked at an estate belonging to one Lamb, next adjoining the petitioner's on the south, and thought it had not been remodelled or changed; that the house on that estate and the petitioner's house were built at the same time; that he did not think the adjoining house any better than the petitioner's house before the latter was remodelled; that the petitioner's house was worth the most; that the two lots were worth the same per foot, but he thought there were more feet in the petitioner's estate; and that he should consider there was an advantage in the location of the petitioner's house over that adjoining, but "not much, not a great deal, say $500." He was then asked, also on cross-examination, this question: "Did n't you make up your mind that the Lamb estate was worth $43,000?" The respondent objected, and counsel for the petitioner said he was testing the value of the witness's opinion, and was not asking him about any offer. The judge

said it was a matter of judicial discretion, and in the exercise of that discretion excluded it; and the petitioner excepted.

The respondent, in introducing evidence of a sale on January 7, 1886, by public auction, of an estate on the southerly side of Ashburton Place, the third house from Somerset Street, and numbered 6 on Ashburton Place, offered to show that the estate consisted of a lot of land containing about fifteen hundred square feet, with a frontage of twenty-seven feet on Ashburton Place; that the front of the house on the lot was covered by mastic, and had twelve or fourteen rooms in it; that the house had been occupied as a dwelling-house, and was constructed for occupancy by one family; that the house, which was thirty or thirty-five years old, had not been remodelled, but was an excellent house, and in very good condition; and that the former owner, one Simpson, was a man of large means, and kept his house in fine order, with an elevator, and everything complete about it. The petitioner objected to the evidence as to what the Simpson house sold for, but the judge admitted it. The price paid for this property at the auction sale was then given as $26,500.

The respondent, in introducing evidence of the sale by auction of another estate, on April 27, 1888, on Ashburton Place, offered evidence that it was situated at the corner of Ashburton Place and Somerset Street, on the northerly side of Ashburton Place, there measuring twenty-eight feet and containing about nineteen hundred square feet, covered by a brick building four stories high, with forty-two rooms, fitted up and used as a hotel; that an arched carriageway led from Somerset Street, under the rear part of the building, to houses beyond. The petitioner objected to the admission of the above evidence, but the court admitted it, and the price obtained was stated to be $48,600. There was also evidence that the same estate was sold by public auction about two years before for $52,000 or $53,000, but the sale was not carried through because of an alleged defect in the title, and that the sale in question was of the same estate with the same title, and that the title was good, a warranty deed being given.

The petitioner objected to the admission of the evidence of either of these auction sales, because, among other things, of the

time and the dissimilarity in location and construction and character of the different lots, buildings, and estates, and on the facts. The judge ruled that it was entirely a matter of discretion with him, and admitted the evidence, saying the weight of it was entirely for the jury to determine; and the petitioner excepted.

It appeared in evidence that the estate numbered 6 Ashburton Place was bid off by the agent of Benjamin F. Butler, a counsellor at law, to whom a conveyance of the estate was made. The petitioner then called Mr. Butler, who was admitted to be an expert in real estate, as a witness, and he testified that he employed the agent in question to bid off the property, fixing a maximum limit to be bid by him thereon. The petitioner then offered to show what was the limit thus fixed, up to which the agent was authorized by Mr. Butler to bid off the property, but the judge excluded the evidence. The petitioner's counsel said he would state what this limit was which he expected to prove, if the judge would permit it; but the judge declined to allow him to do so, saying that he might state it in his bill of exceptions, which accordingly recited the limit to be $30,000.

The petitioner contended that the evidence offered was competent as affecting the auction sale, and the price already admitted in evidence, and excepted to its exclusion.

The petitioner also offered to show, that immediately after the auction sale, on the same afternoon, Mr. Butler was offered an advance of $5,000 on the price at which his agent had bid off the estate; but the respondent objected, and the judge excluded the evidence, and the petitioner excepted.

The petitioner also asked Mr. Butler, and offered to show, as affecting the sale as evidence, what, in his judgment and opinion, the estate bought by him was fairly worth in the market at the time of the sale, and what it was fairly worth at the time of the taking of the petitioner's land. The judge excluded the evidence, and the petitioner excepted.

Mr. Butler testified on direct examination that he occupied a part of the building bought by him as a law office, and rented the rest; that he had occupied offices on Pemberton Square, the site of the court-house, for about seventeen years; and that he "made this purchase in Ashburton Place in order to have a place to stop after the court-house was started." On cross-

examination, the witness, to the question, "You bought this place on Ashburton Place for what purpose?" replied, "I bought it for two purposes: one to occupy a portion of it as an office; and the other, to rent it as well as I could to help pay my rent." To the further question, "You bought it as an office because the court-house had been located in that vicinity?" the witness answered, "I could hardly say that; I bought it because I was wonted there; I had been there seventeen years,— very near there." On re-examination, the petitioner asked the witness, "Was all the object you had when you bought it simply for an office?" The judge, upon the respondent's objecting, stated that the witness had been originally examined on the subject, and excluded the question, but permitted the petitioner's counsel to ask him, "Have you any further answer to his [respondent's] question, as to the reason why you bought the property?" The respondent's counsel then said, "I did n't ask the reason," whereupon the petitioner's counsel said that he had asked the witness, "What was his object in buying it?" and the respondent's counsel then said, "I asked him as to whether he was governed by one reason, — the fact of the city taking the court-house site?" This question was then put by plaintiff's counsel: "Was that your only reason?"

The judge ruled that the petitioner had no right to re-examine the witness, and would not permit it to be done; and the petitioner excepted.

The witness was then permitted to make this explanation: "I think it is fair to everybody to say, so far as that is concerned, that if the court-house had gone somewhere else I should have stayed in my old office, and should not have bought anything, — if that will help either side."

The jury returned a verdict for the petitioner for the sum of $45,243.07; and the petitioner, being dissatisfied therewith, alleged exceptions.

*A. A. Ranney & A. Blume*, for the petitioner.

*T. M. Babson*, for the respondent.

W. ALLEN, J. Several questions of evidence are presented by these exceptions.

1. Certain evidence offered by the petitioner was objected to by the respondent, and excluded as incompetent by the court,

to which ruling the petitioner excepted. The respondent then withdrew its objection to the evidence, and the court for that reason admitted it. The petitioner declined to put in the evidence, and insisted upon his exception. The exception was to the ruling excluding the evidence, and it necessarily failed when that ruling was reversed and the evidence admitted. The reasons of the court for admitting the evidence were not excepted to, and were not matter of exception, and could not affect the weight of the evidence with the jury. If the evidence was admitted by the court, and put in by the party, the jury would be bound and presumed to give the same effect to it as if it had not before been objected to and excluded. The reasons for excluding or admitting it were not to be considered by the jury.

2. After the petitioner had put in evidence of the cost of repairs and alterations that he had made in the building, the respondent was allowed to ask an expert what in his opinion would have been a fair cost for the repairs and alterations which he saw. The objection is, that the witness did not examine the building until after the work of taking it down had been commenced, and that it had been so changed and so much of it removed that he had not the means of forming an estimate of the cost. The witness testified as to the condition of the building when he made his examination, and that he did in fact form an opinion from what he saw of the cost of the whole. We think that the evidence was properly admitted.

3. A witness, one of the court-house commissioners, and an expert in real estate, who was called by the respondent to testify concerning the cost of improvements made in the house, but did not testify in chief as to his opinion of the value of the estate, testified on cross-examination as to his opinion of the value of the estate of the petitioner. He was also asked on cross-examination various questions concerning the petitioner's estate, and concerning an adjoining estate, with a view to showing that the petitioner's estate was much the more valuable, and was then asked if he did not make up his mind that the adjoining estate was worth a certain sum, which was larger than the sum which he had testified that in his opinion the petitioner's estate was worth.

This question was objected to by the respondent, and pressed by the petitioner, as competent to test the value of the opinion of the witness.  The court, holding that it was matter of discretion, excluded the question.  Had the opinion of the witness as to the value of the petitioner's estate been put in by the respondent in chief, and the question excluded been put on cross-examination as to that, though the evidence offered would have been immaterial and not competent to prove the value of the petitioner's land, yet the question might have been admitted, in the discretion of the court, on cross-examination, to test the witness.  But the opinion of the witness as to the value of the petitioner's estate was put in by the petitioner himself, and the court properly refused to allow him to cross-examine the witness on collateral matters to show that the opinion was of no value.

4.  The sales of other similar estates in the neighborhood were admissible.  *Boston & Worcester Railroad* v. *Old Colony & Fall River Railroad,* 3 Allen, 142.  *Paine* v. *Boston,* 4 Allen, 168.  *Shattuck* v. *Stoneham Branch Railroad,* 6 Allen, 115.  *Whitman* v. *Boston & Maine Railroad,* 7 Allen, 313.  *Chandler* v. *Jamaica Pond Aqueduct,* 122 Mass. 305.  *Patch* v. *Boston,* 146 Mass. 52.

The lands sold were near to that of the petitioner, and similar to it, and similarly situated.  One sale was about five months, and the other more than twenty months, after the taking of the petitioner's land.  The mere lapse of time after the taking did not render the evidence of the sales incompetent, and, as the circumstances appear in the evidence, the discretion of the court seems to have been rightly exercised in admitting the evidence.

5.  The petitioner called a witness who purchased one of the estates the sale of which was put in evidence by the respondent, and who was an expert in the value of real estate, who testified that he employed an agent to bid off the property for him at the sale, and fixed a maximum limit to be bid therefor.  The petitioner offered to show what the limit was, and that the agent was instructed to bid for the property more than it was sold for.  An exception was taken to the exclusion of this evidence.  The petitioner also offered to prove that the witness was, on the day of the sale, offered a large advance on what he paid for the

property, and also what in the opinion of the witness was the value of the property, and exceptions were taken to the exclusion of the evidence. The sale was competent, as a fact tending to show the market value of the land, not as evidence of the opinion of the purchaser as to the value. The opinion of the witness of the value of the land, and the fact that he had offered more, and was willing to pay more, or had been offered more . than the land sold for, are clearly incompetent. The fact that the witness was the purchaser at the sale makes no difference. *Rand* v. *Newton*, 6 Allen, 38. *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115. *Wyman* v. *Lexington & West Cambridge Railroad*, 13 Met. 316. *Davis* v. *Charles River Branch Railroad*, 11 Cush. 506.

6. It was said by the same witness during his examination in chief, that he made the purchase in order to have a place to stop after the court-house was started. On cross-examination he was asked for what purpose he bought it, and if he bought it because the court-house had been located in that vicinity, and answered in substance that he bought it for an office, and because he had been near there seventeen years and was wonted there. On re-examination the petitioner asked him if all the object he had when he bought was simply for an office, and whether the fact of the city taking the court-house site was the only reason. These questions, and the re-examination of the witness on the subject, were excluded by the court. The motive and purpose of the witness in making the purchase were immaterial; the proposed re-examination was as to immaterial matter. There was nothing in the testimony of the witness on the subject which could prejudice the petitioner, and the court properly refused to allow the subject to be further pursued by a re-examination upon it.

*Exceptions overruled.*