TERRITORY OF HAWAII, BY EDWARD N. SYLVA, ITS ATTORNEY GENERAL *v.* AMERICAN SECURITY BANK, A HAWAIIAN CORPORATION, ALBERT K. H. FONG ET ALS.

No. 4083.

ARGUED FEBRUARY 25, 1959.      DECIDED MARCH 9, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an interlocutory appeal from the order of the circuit judge of the first circuit relative to methods of determining the assessment of damages in an eminent-domain proceeding.

In 1942 the City and County of Honolulu, through its planning commission, planned a complete system of roadways through Kalihi Valley which included the Kalihi Valley Approach Road and Owawa street. The Kalihi Valley Approach Road was to be a limited-access highway which would run from School street up through Kalihi Valley and through a proposed tunnel in the Koolau Range to the windward side of Oahu. In conjunction with the limited-access highway it was planned that service roads would be constructed parallel and 100 feet away from the Approach Road to provide access to properties which would be landlocked as a result of the construction of the Approach Road. These service roads would also provide access to properties, some of which had no prior access or which had only very poor access. During the early planning for the Kalihi Valley Approach Road, with its attendant service roads, it was presumed that the City and County of Hono-

lulu would construct the entire Approach Road system without any help from either the territorial or United States governments. However, in 1949, contrary to the belief theretofore held, it was discovered that the Federal Bureau of Roads would assist in the construction of the Approach Road. After a number of conferences between officials of the City, the Territory and the Federal Governments, the Federal Bureau of Roads advised the highway department that if the Territory would recommend the Kalihi Valley Approach Road, the Federal Bureau would approve such road for Federal aid from School street to the Forest Reserve boundary. However, it was agreed that the land development and service roads that would be required for the Approach Road should be undertaken by the City and County of Honolulu.

As a result of this offer of Federal assistance, the City and County of Honolulu proceeded to plan for the construction of necessary service roads to the Kalihi Valley Approach Road. A number of public hearings was held so that these service roads could be constructed under an Improvement District setup. In all these hearings it was explained that the territorial highway department would construct the main Kalihi Valley Approach Road and the City and County of Honolulu would construct the needed service roads. It was also pointed out to the property owners that unless the Improvement District were approved permitting the City and County of Honolulu to construct service roads, the Territory of Hawaii would not proceed with construction of the main Kalihi Valley Approach Road. It was also pointed out as a practical matter that the service roads would have to be constructed in advance of the Approach Road itself, this in order that the property owners whose lands would be landlocked as a result of the construction of the limited-access Approach Road would not have to suffer unnecessarily.

In 1953 the City and County of Honolulu passed the necessary resolutions to construct the service roads for the Approach Road as Improvement District No. 95. It also, by resolution, duly agreed to pay for any severance damages resulting from the construction of the Approach Road by the Territory of Hawaii.

Pursuant to the plans, on March 8, 1954, the City and County of Honolulu purchased the parcel required for Owawa street

owned by the Fong Hing interests, appellees herein. This parcel required for Owawa street was a portion of Fong Hing's original tract of land from which parcels are sought to be taken for construction of the Approach Road. About the same date, almost two years before the completion of Owawa street by the City and County of Honolulu, the Territory acquired its first parcel of land in the Owawa street area which was required for the Kalihi Valley Approach Road.

The Territory continued its activity in the proposed arrangements by demolishing houses and improvements upon the rights of way for the Kalihi Valley Approach Road and on February 15, 1956, one month after the completion of Owawa street and six months before its acceptance by the City and County of Honolulu, the Territory of Hawaii filed its action in condemnation for the Fong Hing properties which are required for the Kalihi Valley Approach Road. This delay in bringing condemnation proceedings was in keeping with the agreement between the Territory of Hawaii and the City and County of Honolulu that Owawa street and other service roads would be completed before construction would commence on the main Kalihi Valley Approach Road, the purpose being to give property owners due access before cutting off their access to existing roads in Kalihi Valley.

The court below held that the construction of Owawa street could result in a compensable enhancement in the value of the land required for the Kalihi Valley Approach Road, thus treating the proceedings in the acquisition of Owawa street and the Kalihi Valley Approach Road as separate and independent of each other; that Owawa street being first constructed, the Fong Hing owners were entitled to any enhancement in value of their other lands, parts of which were later acquired for the Kalihi Valley Approach Road.

Whenever a particular public work is constructed and is of such a character as to benefit the surrounding land and values begin to rise in anticipation, the question arises whether when the ta. aι is actually made the increase in value should be considered in awarding compensation. If it is known from the beginning what the site of a new public work is to be, the owner is not entitled to claim the benefit of the general rise in values as his land could

never have been expected to enjoy the proximity of the improvement. (18 Am. Jur., *Eminent Domain*, § 246, p. 884, citing *Shoemaker* v. *United States*, 147 U.S. 282, *Kerr* v. *South Park*, 117 U.S. 379, and numerous other cases.)

As stated in *Dorgan* v. *Boston*, 94 Mass. 223, it is difficult to understand how land is increased in value to the owner by public improvements which can be effected only by depriving him of its use.

And again, "If the expected improvement involves the taking of land by the right of eminent domain, the value of the land taken will never be enhanced by the improvement, for the taking precludes the possibility of ever using it under improved conditions. In that respect it stands differently from other land in the vicinity which is not taken." (*May* v. *Boston*, 158 Mass. 21, 32 N.E. 902.)

The defendant argues this case as if certain land had been taken by eminent domain and then the project had been enlarged so as to require additional land. Under those circumstances, such additional land would have to be paid for on the basis of its enhancement due to the prior taking and improvement. However, this is all one project and the second taking was part of the original plan. As stated in 4 Nichols, *Eminent Domain*, Section 12.3151 [E], page 127:

> "*Supplemental taking.* If a definite area has already been condemned the market value of the neighboring property is naturally affected thereby. If an enhancement in value results such property is entitled to the benefit thereof. It follows that if the original project is subsequently enlarged so as to embrace additional property, such additional property as is involved in the supplemental taking is entitled to the benefit of any enhancement in value which resulted from the original taking. *If, however, the public project from the beginning included the taking of certain tracts, but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately taken.*" (Emphasis added.)

As a case directly in point see *United States* v. *Miller,* 317 U.S. 369, wherein a portion of the syllabus states:

"Where, from the date of its authorization by Act of Congress, a federal reclamation project included the relocation of a line of railroad, and a probable route was marked out over certain lands subsequently taken in eminent domain proceedings, it is proper, in determining just compensation, to exclude from value as of the date of the taking such increase as occurred since the date of the authorization of the project and as a result thereof."

In the present case it is undisputed, and the court below so found, that all the property was required for a single improvement and was included in the original plan for the improvement and these facts were known to the public.

In the present case the value of the property is to be fixed as of the date of the taking, but any value at such date which may be due to any increase that has occurred subsequent to the Owawa street condemnation must be excluded and, further, as is always the case, the property must be valued as if no suit were pending.

Reversed.

*Robert K. Richardson,* Deputy Attorney General (also on the briefs), for the Territory.

*William K. M. Chee* (*Chee and Lee* on the brief) for Albert K. H. Fong et als.