STATE OF HAWAII, BY BERT T. KOBAYASHI, ITS ATTORNEY GENERAL *v.* HEIRS OF HALEMANO KAPAHI AND LUKA HALEMANO, INCLUDING AGNES LUKA AKAU, BEULAH ARAKAKI, JULIANA FEARY, MARY INOUYE, ANNA KAU, FRANCIS MAKIA KAU, JOSEPH KAU, WILLIAM KAU, JR., GABRIEL KUKONU, HENRY KUKONU, MITCHELL KUKONU, HERMAN LIU, MARY NOMURA, KATHERINE (KATRINA) P. UMI, BARBARA WOOLSEY, GERTRUDE YAMADA, ROMAN CATHOLIC CHURCH IN THE TERRITORY OF HAWAII, AN ECCLESIASTICAL CORPORATION; JOHN EDWARD RUSSELL, HERMAN VALDEMAR VON HOLT, DAVID HEBDEN PORTEUS, DUDLEY CUSHMAN LEWIS, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF SAMUEL MILLS DAMON, DECEASED; JOHN DOE 1 TO 100; MARY ROE 1 TO 100; AND DOE CORPORATION, LIMITED, 1 TO 100.

No. 4332.

OCTOBER 1, 1964.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, JJ., CIRCUIT JUDGE KING, IN PLACE OF LEWIS, J., DISQUALIFIED, AND CIRCUIT JUDGE OKINO, IN PLACE OF MIZUHA, J., DISQUALIFIED.

102

OPINION OF THE COURT BY WIRTZ, J.

This appeal is from the judgment of the Circuit Court sitting with a jury in an eminent domain proceeding. Plaintiff-appellant brought the action on March 20, 1959, to condemn lands of the defendants-appellees, trustees of

the estate of Samuel M. Damon, for realigning and widening Moanalua Road and constructing a limited access facility. Defendants in their answer admitted all of the allegations of the complaint and prayed that they be awarded just compensation.

This eminent domain proceeding involved a partial taking of land consisting of five parcels of land at and near the corner of Puuloa and Moanalua Roads in Honolulu: Parcel 1, 2,434 acres or 106,036 sq. ft.; Parcel 1-A, 0.0016 acre or 71 sq. ft.; Parcel 2, 0.023 acre or 1,000 sq. ft.; Parcel 6-A, 0.510 acre or 22,236 sq. ft.; and Parcel 6-B, 3.099 acres or 134,980 sq. ft.

The jury had viewed the land taken, examined various maps, photographs and charts presenting computations, and heard the testimony of six appraisers as to their respective methods and approaches toward valuation, as well as their opinion of the value, of the properties taken. The range of the values testified to was from a low of $500,360 to a high of $902,412. The jury's verdict was that the fair market value of the land taken, as of March 20, 1959 (the date of summons), together with all improvements thereon,[1] was $835,237.

Appellant asserts nineteen alleged errors of the trial court. These it divides into five categories of error: (1) in ruling that the State, as plaintiff, had the burden of proof and the burden of going forward with evidence;[2] (2) in ruling on the methods of valuation; (3) in the admission of evidence of enhancement of the defendants' remaining properties; (4) in the exclusion of evidence of special benefits (the nature of the proposed project and the extent of the work to be done under the project); and

[1] The value of the improvements was minimal.

[2] "Error No. 1. The Court erred in ruling that the State or the government has the burden of proof in condemnation cases.
"Error No. 2. The Court erred in ruling that the State or government had the burden of going forward with proof."

(5) in the alleged improper conduct of the trial court.

In chambers, immediately prior to the commencement of the trial the judge, over objection of the plaintiff, ruled that plaintiff had not only the right but the duty to open and close the presentation of the evidence and argument to the jury. While plaintiff requested "a ruling on who has the burden of proof" and the judge ruled that "the State or the Government has the burden of proof," counsel for plaintiff immediately thereafter in open court interpreted this ruling as follows: "I presume that the Court's ruling is that the State should proceed with its case first."

While the judge did initially use language indicating that he was ruling on the burden of proof, it should be readily apparent from the record that all the trial judge had before him and all that he actually ruled on was the right and duty of the plaintiff to open and close in the presentation of evidence and in argument to the jury.

It has been the uniform practice for the condemnor to present its evidence of valuation first. This is in accord with the applicable statutes. R.L.H. 1955, § 8-10 provides:

"Except as otherwise expressly provided in this part [Eminent Domain], the procedure shall be the same as in other civil actions."

Section 8-12 designates the attorney general as the plaintiff, and section 8-13 states:

"* * * All persons who are owners or claimants of the property to be condemned shall be joined as defendants."

Otherwise R.L.H. 1955, c. 8, dealing with Eminent Domain is silent on trial procedure. Section 231-17 sets forth the order of trial in civil actions:

"The trial of every * * * civil cause in any court of the State shall proceed in the following order, that is to say:

"(a) The * * * plaintiff * * * and the defendant,

or his attorney, may state their respective cases;

"(b) The * * * plaintiff must then produce the evidence on his part;

"(c) The defendant may then open his defense and offer his evidence in support thereof;

"(d) The parties may then respectively offer rebutting evidence only * * *."

Plaintiff contends that in an eminent domain case, the burden of proof of value is on the landowner and, accordingly section 231-17, set out above, should be read so that "plaintiff" therein means "defendant" and vice versa. This court in *Trustees Bishop Estate* v. *Lulia,* 16 Haw. 630, 632, disposed of a similar argument:

"The contention that defendant had the right to open and close the case, because she admitted plaintiffs' paper title and had the burden of proof, is disposed of by section 1768 of the Revised Laws."[3]

In support of its second category of errors covering specifications of error numbered three to six,[4] plaintiff contends that "a party in an eminent domain action has the option of proving the value of the property to be taken either as a separate and independent parcel of land or as a portion of an entire tract of land," citing *Territory of Hawaii* v. *Adelmeyer,* 45 Haw. 144, 363 P.2d 979. This contention is broader than the ruling of this court in *Adelmeyer.* The option of appraisal methods is applicable

---

[3] R.L.H. 1905, § 1768, provides for substantially the same trial procedure as set forth above in R.L.H. 1955, § 231-17.

[4] "Error No. 3. The Court erred in sustaining Defendants' objection to the question: 'Describe what the nature of the Damon property was before the highway taking?'

"Error No. 4. The Court erred in sustaining Defendants' objection to the valuing by Mr. Hambleton, appraiser, of the whole Damon property without restricting valuation to only the part taken.

"Error No. 5. The Court erred in granting Defendants' motion to strike Appraiser Moore's answer because he appraised a sixteen acre tract of land rather than only the part taken.

"Error No. 6. The Court erred in denying Plaintiff's Instruction No. 4 * * * [set out in the body of the opinion]."

only to a partial taking in a highway widening or realignment case where the independent economic use of the parcels taken is properly the subject of a difference of opinion because of their character, size and shape.

In *Adelmeyer*, this court was highly critical of the use of the "before and after" method of appraisal in any partial taking case involving highway widening and realignment situations, as contravening the prohibition of R.L.H. 1955, § 8-21, that special benefits cannot be set off against the value of the land taken but only against severance damages. Especially is this criticism applicable where there is no issue as to severance damages. However, *Adelmeyer* recognized that where the parcel taken was of limited size or unusual shape, or both, and without independent use, it would, of necessity have little or no economic value unless considered in its relationship to the whole tract. But in using the "before and after" method of appraisal, even as to such small and unusually shaped parcels, *Adelmeyer* pointed out that "there the danger of unconsciously interjecting severance damages is ever present and must be guarded against." We might add that the same admonition would be appropriate as to the interjection of benefits. On the other hand, where the parcels taken are clearly of a size and shape to warrant independent economic use, the appropriate method of valuation, indicated in *Adelmeyer* as applicable to highway widening and realignment cases, is to value such parcels as independent entities.

The errors specified under this second category may be summarized as pertaining to whether the value of the parts taken should be considered in relation to all of defendants' adjoining land.

Specification of error numbered three refers to the trial court's ruling sustaining the objection of defendant to plaintiff's question to the assistant chief engineer of

the State Division of Highways asking for a description of "the nature of the Damon property * * * before the highway taking?" This question was put immediately after the trial court had properly ruled that "evidence of special benefits in this case" would not be permitted. In this context, plaintiff's stated purpose of the question "to show to the jury the condition of the property before March 20, 1959" (date of summons) was equivocal at best as it could bear on either the "before and after" method of appraisal or on the question of special benefits to the remaining land of defendants. The trial court sustained the objection on the ground that the question sought to circumvent its ruling on the issue of special benefits. In any event, as the trial court permitted the matter to be explored in subsequent questioning, plaintiff was not prejudiced by this ruling.

Specification of error numbered four applies to a sustained objection to testimony of one of plaintiff's appraisers to valuation of all of defendants' property, including over ninety acres which were not subject to the taking. While this testimony might have had bearing on the "before and after" method of appraisal utilized by the appraiser, if deemed appropriate under *Adelmeyer, supra,* 45 Haw. 144, 363 P.2d 979, once again plaintiff was not prejudiced by this ruling as the witness was later permitted to testify that he valued the entire one hundred and four acres owned by defendants and from that computed the value of the parcels taken.

Specification of error numbered five is similar to that numbered four, above considered, in that the trial court granted a motion to strike similar testimony of another appraiser for the plaintiff and then later permitted the witness to testify to the substance of the stricken answer.

Specification of error numbered six pertains to the denial by the trial court to give plaintiff's requested in-

struction No. 4 which read as follows:

> "In determining the actual value of the property being taken you must consider its value in relation to all of the property owned by the defendants. In this connection you must consider the highest and best use of all of the defendants' lands and must not arbitrarily raise the value of the portions being taken and paid for by the State without regard for the land not being taken."

This was a binding instruction on a single method of valuation to the exclusion of all others which was not applicable to all of the parcels taken but only to some, depending on their size, shape and character in rendering them economically dependent on the remaining land. *Territory* v. *Adelmeyer, supra,* 45 Haw. 144, 159, 161, 363 P.2d 979, 987, 989.

Furthermore, the trial court adequately instructed the jury on this subject in the language of defendants' requested instruction No. 10, which was given by agreement as modified:

> "This case involves a partial taking of an entire tract of land owned by the Damon Estate. Where parcels taken in eminent domain are of the size and character as to assume proportions of independent economic use in the light of the highest and best use of the land, the method of valuation of the parcels taken whether as a separate entity or in relation to the whole tract then becomes a matter of opinion of the appraisers to be weighed by the jury."

So, additionally, it was not error to refuse plaintiff's requested instruction No. 4 as the subject matter was amply covered by the above quoted instruction given to the jury. *Territory* v. *Adelmeyer, supra,* 45 Haw. 144, 156, 363 P.2d 979, 986; *Estate of Ching,* 46 Haw. 127, 376 P.2d 125; *Kealoha* v. *Tanaka,* 45 Haw. 457, 370 P.2d

468; *Ginoza* v. *Takai Electric Co.,* 40 Haw. 691; *Ciacci* v. *Woolley,* 33 Haw. 247. In passing, we can only observe that valuation as part of a larger tract is generally to the advantage of the landowner and hardly a matter by which the condemnor could be prejudiced. 4 Nichols, *Eminent Domain* (3d ed.), § 14.231, p. 542.

Plaintiff's third group of specifications of error (numbered seven through eleven)[5] assert that the trial court erred in permitting one of defendants' appraisers to testify about leases executed after the date of taking, in denying a motion to strike the opinion of another witness as to valuation, and in admitting two maps into evidence.

Specifications of error numbered seven and eight relate to testimony of Mr. Carter as to leases of comparable adjoining lands of the defendants entered into within a few months after the date of taking. Plaintiff objected to this testimony because:

"* * * [I]nvolved in the property not taken are special benefits which this Court has already ruled out, and that we are now entering into this area of special benefits and we will be forced to go into the whole question again."

The trial court overruled the objections and stated that plaintiff would be allowed to produce evidence to establish whether any increased value was caused by special benefits.

Mr. Carter also gave his opinion that the value of the

---

[5] "Errors Nos. 7 & 8. The Court erred in allowing evidence of leases enhanced by the project for which land was being taken.

"Error No. 9. The Court erred in denying Plaintiff's motion to strike witness's opinion of value when the witness admitted that his opinion was based upon cost to develop the Damon property after taking and not upon cost to develop the Damon property before taking.

"Error No. 10. The Court erred in allowing Defendants' Exhibit 2 [map] into evidence in that the exhibit showed the Damon lands as they existed subsequent to the date of summons.

"Error No. 11. The Court erred in admitting into evidence Defendants' Exhibit 4 [map]."

parcels taken was not less than $3.00 per square foot; or a total of $792,969 as of the date of taking. On cross-examination he said that the leases, standing alone, were insufficient for an ordinary appraiser to value the property. He testified that had there been an enhancement to the leased properties, it would have been reflected in the agreed prices. He was never asked whether there was any such enhancement. He further testified that these more recent leases had little weight in his opinion of the $3.00 valuation.

In response to plaintiff's question as to his valuation approaches, he testified that defendants had received an offer of $3.00 from an interested purchaser, and that the additional information by way of leases confirmed the good judgment of the offeror. He said that the property should be valued in its condition as of the time of taking.

The other two appraisers called by defendants valued the condemned lands higher than did Mr. Carter. Mr. Fuller, who valued the land as of March 20, 1959 (date of summons), at $902,412, testified on cross-examination that he valued the property as if the land for the highway were not taken. He did not consider any leases made by defendants, and gave little weight to pending negotiations for leases.

Mr. De Vault, who appraised the value of the land taken as of March 20, 1959 (date of summons), at $843,962, did not base his opinion on any Damon Estate leases since he had enough other data upon which to form his opinion. He believed there was nothing wrong with considering them, even though he himself did not do so. Plaintiff offered no evidence in rebuttal.

The trial judge instructed the jury:

"In determining the fair market value of lands of the Damon Estate being condemned for the Moanalua Road and Puuloa Interchange, you must disregard the

proposed Moanalua Road and the proposed interchange and must consider the value of the land as if these projects were not being constructed.

"The Damon properties being taken must therefore be valued as they stood on March 20, 1959 and must not be given any increased value because of the proposed Moanalua Road and Puuloa Interchange construction."

The jury's verdict of $835,237 was higher than the valuation given by Mr. Carter, but less than that of the other two appraisers who testified for defendants.

The general rule as to what evidence of comparable sales, and leases fall into the same category, is admissible has been stated in 1 Orgel on *Valuation Under Eminent Domain* (2d ed.), § 139:

"The courts make no attempt to describe minutely the essential constituents of similarity in market conditions. They usually assume that if property similar in other respects has been sold within a reasonable time of the taking, its sale price is relevant in determining the market value of property taken. As to what constitutes a reasonable time, a wide discretion is vested in the trial court and the appellate courts are reluctant to reverse the lower court's determination as a matter of law. In the usual run of cases, a sale within a year is admitted as a matter of course. In any case, however, a finding that the evidence falls within a reasonable time does not imply that market conditions are precisely the same and it remains open to either party to dispute the significance of the sale by proving a change in market conditions. Generally speaking, the courts make no distinction between sales occurring prior to the taking and sales consummated after the date when title has vested in the condemner. They usually admit the latter type of evidence, some-

> times qualifying their ruling by stating that the sale adduced must not be too remote in time or that there must be no drastic change in market conditions."

The test is the similarity of the lands and the reasonableness of the time of sale in order to have any application to the value of the land taken at the time of condemnation, which is the sole question before the jury.

So long as it meets the test of comparability of commodity and propinquity, evidence of commerce in land after the date of condemnation has been held competent and admissible as bearing on the value of the condemned land at the time of the taking. *Roberts* v. *City of Boston,* 149 Mass. 346, 21 N.E. 668; *Bartlett* v. *City of Medford,* 252 Mass. 311, 147 N.E. 739; *Morrison* v. *Cottonwood Development Co.,* 38 Wyo. 190, 266 Pac. 117; *Kansas City* v. *Boruff,* 295 Mo. 28, 243 S.W. 167; *Dormann* v. *State,* 4 App. Div. 2d 979, 167 N.Y.S.2d 760; *Mississippi State Highway Commission* v. *Stout,* 242 Miss. 208, 134 So. 2d 467; *Housing Authority of City of Dallas* v. *Shambray,* 252 S.W.2d 963 (Tex. Civ. App. 1952); *Housing Authority of City of Dallas* v. *Hubbard,* 274 S.W.2d 165 (Tex. Civ. App. 1954); *State* v. *Thompson,* 290 S.W.2d 319 (Tex. Civ. App. 1956). *Cf., Redfield* v. *Iowa State Highway Commission,* 252 Iowa 1256, 110 N.W.2d 397; *Iowa Development Co.* v. *Iowa State Highway Commission,* 252 Iowa 978, 108 N.W.2d 487; *Hance* v. *State Roads Commission of Maryland,* 221 Md. 164, 156 A.2d 644.

From the foregoing authorities emerge the following applicable principles: Where evidence of a comparable sale or lease is offered, the trial judge may, in his discretion, admit or exclude it considering such factors as time of the transaction, size, shape and character of the comparable land, and whether there has been any enhancement or depression in value. It makes no difference whether the transaction occurred before or after the date

of condemnation so long as it is not too remote a period of time and the land is reasonably comparable, having been neither enhanced or decreased in value by the project or improvement occasioning the taking. The weight to be given such evidence is for the jury. The trial judge's determination as to admissibility or non-admissibility of such evidence will not be upset on appeal unless it is a clear abuse of discretion. See also: 18 Am. Jur., *Eminent Domain*, § 351; 29 C.J.S., *Eminent Domain*, § 273; 30 C.J.S., *Eminent Domain*, § 363; 4 Nichols, *Eminent Domain* (3d ed.), § 12.311(3); 6 Nichols, *Eminent Domain* (3d ed.), § 26.731(2); II Wigmore, *Evidence* (3d ed.), § 463.

We are in complete agreement with plaintiff's contention that an owner of land should not be allowed an increased value for his land due to enhancement resulting from the improvement project. *Territory* v. *Fong*, 43 Haw. 167. In *Kerr* v. *South Park Commissioners*, 117 U.S. 379, also relied on by plaintiff, the court affirmed the trial court's exercise of discretion in excluding evidence of sales of land adjoining the park for which the subject land was condemned, after it had first found that the adjoining lands had been enhanced in value by the park. This is in accord with the principles above expressed. In the present case, unlike *Kerr, supra,* there is no evidence that the lands subsequently leased were enhanced in value by the improvements. Although not precluded from so doing by the trial judge, plaintiff made no attempt to show any enhancement in values because of the improvements. Further, the three appraisers for the defendants testified that their valuations were as of the date of taking and, as seen, the judge specifically instructed the jury to exclude any consideration of enhancement.

Here, as in the *Kerr* case, *supra,* the question before this court is whether the trial judge abused his discretion

in ruling that the evidence of subsequent leases as utilized by the one appraiser in connection with his opinion of value at the time of taking was competent and admissible. In the absence of any showing that the lands under these leases were enhanced in value by the construction and realignment of the highway, we can only conclude that, under the circumstances of the relatively short lapse of time and the reasonable comparability of the land, no abuse of discretion has been shown.

Plaintiff's other specifications of error under this third classification are groundless. Plaintiff's briefs and argument fail to indicate how or in what respect the court's denial of the motion to strike the opinion of value by Mr. Carter (specification of error numbered nine), other than what has already been considered generally, was error or, if erroneous, how it was prejudicial. The trial judge properly denied plaintiff's motion on the basis that the grounds therefor did not take into consideration the full and complete testimony of the witness. The witness testified unequivocally that his opinion of valuation was as of March 20, 1959 (date of taking), and was given without regard to the taking. A witness having the necessary qualifications may give his opinion as to the value of property. *Territory* v. *Adelmeyer, supra,* 45 Haw. 144, 148, 363 P.2d 979, 982. No issue was raised here as to his qualifications. The factors considered and the extent of knowledge and reasoning of an otherwise qualified appraiser are matters which go to the weight rather than the competence of his testimony.

Plaintiff has also failed, in its briefs and argument, to show how the admission of two maps[6] were error or prejudicial. The maps were correct maps of the property and, although they depicted the public improvements made, could not be deemed prejudicial to plaintiff.

---

[6] Exhibits 2 and 4.

Under the fourth classification of specified errors (those numbered seven through seventeen)[7] plaintiff contends that "whenever the sale or lease of lands in the vicinity of a public project is introduced and admitted into evidence, a fact question arises as to whether or not the sale or lease has been enhanced by the public project, and it is the right of the opposing party to introduce rebuttal evidence to show such enhancement." Plaintiff is here referring to the testimony of Mr. Carter relating to the values reflected in leases executed subsequent to the taking in connection with the possible enhancement of the value of the demised premises due to the public project.

This question has been considered above under the previous category of errors (numbered seven and eight) and the testimony was ruled to be competent. As there pointed out, although not prevented from doing so, plaintiff offered no such rebuttal evidence.

While plaintiff classifies these errors solely under the above contention, some refer to the trial judge's exclusion of evidence and denial of an instruction relating to special benefits and the cost of the public improvements made.

[7] See specifications of Error Nos. 7 through 11, set forth in footnote 5, *supra*.

"Error No. 12. The Court erred in sustaining Defendants' objection to question relating to the nature of the construction to be done by the Highway Department.

"Error No. 13. The Court erred in sustaining Defendants' objection to any evidence of Plaintiff's construction after going into possession.

"Error No. 14. The Court erred in permitting Defendants' witnesses to testify to the cost of construction to the Damon Estate after having denied Plaintiff the right to give evidence as to Plaintiff's construction project.

"Error No. 15. The Court erred in sustaining Defendants' objection to the question: 'In your opinion, does this property (Damon property after the highway taking) benefit from construction of the bridge, connecting road, and this overpass by the State?'

"Error No. 16. The Court erred in sustaining Defendants' objection to the question: 'The State paid for that construction (of the overpass, connecting road, and bridge)?'

"Error No. 17. The Court erred in denying Plaintiff's Instruction No. 1 * * * [set forth in body of opinion]."

116

(Specifications numbered twelve through seventeen.)

Repeatedly during the trial plaintiff attempted to inform the jury of the cost of the highway improvements on the land taken, for the purpose of claiming special benefits to defendants' remaining land. This evidence was inadmissible under R.L.H. 1955, § 8-21[8] and this court has so ruled. In *Territory* v. *Adelmeyer, supra,* 45 Haw. 144, 151, 363 P.2d 979, 983, it was pointed out that, in street widening and realignment situations, the statute required the "* * * setting off of benefits against severance damages alone * * *." Defendants here waived any claim to severance damages resulting from the highway realignment. There was no issue as to severance damages or as to special benefits as set off against them.

In *Territory* v. *Mendonca,* 46 Haw. 83, 96, 375 P.2d 6, 13, the question before this court was whether benefits to land which abuts on a proposed road are general or special where other properties also front on the road and receive these same benefits and the following comment was made:

"This is a situation that occurs most frequently in street widening and realignment cases where not all the properties abutting the widened or realigned highway have been required to contribute a portion of their lands for its construction. It is significant that the

---

[8] The applicable provisions of R.L.H. 1955, § 8-21 are:

"* * * In case condemnation shall be for the purpose of widening or realigning any existing highway or other public road, the owner of the property condemned shall be entitled to full compensation for the property actually taken and special benefits shall be considered only in so far as the value of such benefits shall not exceed the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvements in the manner proposed by the plaintiff, i.e., if the special benefits shall be equal to such severance damages the owner of the parcel shall be allowed no compensation except the value of the portion taken but if the special benefits shall be less than such severance damages the former shall be deducted from the latter and the remainder shall be the only damages allowed in addition to the value of the land taken."

legislature has seen fit in such situations to further limit the use of special benefits only for the purpose of minimizing damages to the remaining lands and thus insuring the owner payment in cash for the value of the land taken. R.L.H. 1955, § 8-21. This is legislative recognition of the equitable principle that it is unfair to make one person pay in land for that which another receives free."

Plaintiff's requested instruction No. 1 was couched in the language of the first part of R.L.H. 1955, § 8-21[9] which, in general, permits the condemning authority in the exercise of eminent domain to offset special benefits to the remaining land in partial taking cases against the total of severance damages and the value of the land taken. However, as seen above, the latter portion of the statute provides otherwise in the cases of highway widening and realignment by limiting the set-off of special benefits to severance damages alone.

Plaintiff's attempt throughout the trial to inform the jury that the State had spent $551,000 on road improvements was for the avowed purpose:

"To show that the State Highway Department has

---

[9] "§ 8-21. *Damages assessed, how.* In fixing the compensation or damages to be paid for the condemnation of any property, the value of the property sought to be condemned with all improvements thereon shall be assessed, and if any of the improvements are separately owned, the value thereof shall be separately assessed. If the property sought to be condemned constitutes only a portion of a larger tract, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff shall also be assessed, and also how much the portion not sought to be condemned will be specifically benefited, if at all, by the construction of the improvement proposed by the plaintiff. If the benefit shall be equal to the amount of compensation assessed for the property taken and for damages by reason of its severance from another portion of the same tract, then the owner shall be allowed no compensation, but if the benefits shall be less than the amount so assessed as damages or compensation, then the former shall be deducted from the latter and the remainder shall be the amount awarded as such compensation or damages. * * *"

constructed the overpass and bridge for the Damon Estate which will involve a question of how much benefit the Damon Estate has received as a result of the action of the Highway Department."

This evidence was improperly based on the assumptions that any highway improvement results in a benefit to the adjoining remaining land and that, if so, such benefit or enhancement is measured by the costs of the public improvement. It was offered not in rebuttal but in plaintiff's case in chief, before the issue of enhancement became material. There was never any proper rebuttal evidence offered or introduced as to enhancement. There is only the testimony of Mr. Carter on cross-examination to the effect that if there had been enhancement to the adjoining remaining lands of the Damon Estate it would have been reflected in the agreed rentals under the leases entered into subsequent to the improvement.

Plaintiff could have offered appropriate evidence showing enhancement including special benefits as an element thereof, to the remaining properties as the defendants did open the door to the extent of permitting rebuttal on the testimony of the leases entered into subsequent to the improvement. Plaintiff failed to do so although not prohibited by the trial judge.[10]

Since the present case concerned the realignment and widening of Moanalua Road, and defendants waived any claim to severance damages, the question of special benefits

---

[10] When the question of the admissibility of the testimony concerning these leases was raised, plaintiff sought an advisory opinion of the trial judge as to its right to rebut the same. Although the trial judge indicated his disinclination to admit such rebuttal evidence he concluded the lengthy colloquy, at which time there was nothing concrete before him for a ruling, by saying "Try it when the time comes." Despite this plaintiff further sought the advice of the trial judge as to the propriety of offering opinion evidence in rebuttal and the judge indicated that he didn't "think they're competent to testify to that." Plaintiff, however, never attempted to introduce rebuttal evidence as to enhancement so as to secure a ruling of the trial judge which we could review.

was not relevant, except for the limited purpose of rebutting the testimony relating to leases executed after the taking. The trial judge properly sustained defendants' objections to plaintiff's questions attempting to elicit the cost of the improvements and properly refused plaintiff's requested instruction No. 1. Specifications of error numbered twelve through seventeen are without merit.

Plaintiff's last grouping comprising the remaining two specifications of error (numbered eighteen and nineteen)[11] complain of the trial judge's rulings on the scope of cross-examination and responses of witnesses. Plaintiff made no attempt, either in its brief or at the oral argument, to show how the trial judge's conduct of the trial was erroneous or prejudicial.

R.L.H. 1955, § 231-18 states:

> "It shall be the duty of the court to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the entire truth regarding the matters involved."

The conduct of the cross-examination of witnesses is within the discretion of the trial judge and will not be reviewed on appeal except upon a showing of an abuse of discretion materially prejudicial to appellant. 58 Am. Jur., *Witnesses*, § 841; 88 C.J.S., *Trial*, § 162. Harmless error is purely academic. 5 Am. Jur. 2d, *Appeal and Error*, § 776; H.R.C.P., Rule 61.

At no time during the trial did plaintiff's counsel feel so aggrieved by what he now criticizes as to move for a

---

[11] "Error No. 18. The Court erred in preventing witness from giving full explanation to a cross-examination question.

"Error No. 19. The Court erred in interfering with Plaintiff's conduct of cross-examination."

The specifications of error set forth several examples under each contended error.

mistrial. Plaintiff fails to support the claim of improper conduct with reason or authority. Its sole contention, made in its opening brief, is that: "Appellant simply contends that the cumulative effect of the various examples of improper conduct of the trial prejudiced the appellant's case and requires the granting of a new trial." No abuse of discretion has been shown with respect to any of the contended individual errors, nor does it appear that the actions of the trial judge were inconsistent with justice. The cumulative result of these contended errors can be no greater than their individual effect. *Cf., Territory* v. *Alcosiba,* 36 Haw. 231, 243. At the oral argument, these specifications of error were never urged.

Specifications of error numbered eighteen and nineteen were not only waived but are groundless.

Plaintiff does not contend on this appeal that the verdict of $835,237 is not supported by the evidence. All six appraisers were permitted to testify on the valuation of the land being taken and the jury was instructed that the methods of valuation became a matter of opinion of the appraisers to be weighed by it. All the appraisers were able to give their respective opinions as to the market values of all parcels taken and these were considered by the jury along with the other evidence. The jury was properly instructed that they were "not bound by the opinion of any expert." The verdict was well within the range of the testimony and showed no misapprehension of the application of the instructions to the evidence. *Territory* v. *Adelmeyer, supra,* 45 Haw. 144, 163, 363 P.2d 979, 990.

The judgment appealed from is affirmed.

*Robert K. Richardson,* Special Deputy Attorney General, for plaintiff-appellant.

*J. Garner Anthony* (*Robertson, Castle & Anthony*) for Trustees Estate of Samuel M. Damon, defendants-appellees.