## BRIGHAM CITY v. CHASE.

No. 1687. Decided May 12, 1906 (83 Pac. 436).

1. ·EMINENT DOMAIN — CONDEMNATION PROCEEDING — OWNERSHIP OF LAND — PLEADING.—A person who had filed a homestead entry on a tract of land, and thereafter relinquished and canceled the entry pursuant to a contract with the state board of land commissioners, by which they agreed to select the lands under grant to the state from the United States, to preserve the entryman's rights, and to sell the land to him at a certain price, all of which was done, the entryman thereafter remaining in possession of and claiming the land, was an owner, within Revised Statutes 1898, section 3594, relative to condemnation proceedings, and providing that the complaint in such proceeding must contain the names of the owners of the property.

2. SAME — PARTIES — PERSONS CLAIMING INTEREST IN LAND.—Under Revised Statute 1898, section 3595, relative to condemnation proceedings, and providing that all persons in occupation of or having or claiming an interest in the property sought to be condemned may, though not named in the complaint, appear and defend each as to his own interest, it is not necessary that the complaint in condemnation proceedings make all of the owners or alleged owners parties.

3. SAME — SALE PENDING PROCEEDINGS.—Under Revised Statutes 1898, section 2920, providing that where, during the pendency of a suit, a party transfers his interest, the action or proceeding may be continued in the name of the original party, the sale of property sought to be condemned after the commencement of the condemnation proceedings, does not require the purchaser to be made a party.

APPEAL from District Court, Box Elder County; before Justice W. W. Maughan.

Condemnation proceedings by Brigham City against George R. Chase. There was judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Street & Bramel* for appellant.

*B. H. Jones* and *W. H. King* for respondent.

APPELLANT'S POINTS.

The action is one under the eminent domain act of the state of Utah, and the lower court must acquire its jurisdiction solely by virtue of that statute. "The right of eminent domain is entrusted to the Legislature, whose control is supreme, except it may be qualified by constitutional declaration." (Randolph, Eminent Domain, pp. 91, 288; *Lake Shore v. Railroad,* 97 Ill. 506.) Formalities and modes of procedure prescribed by statute are of the essence of the grant which courts cannot disregard on a conception that they are not essential. (1 Lewis Eminent Domain (2 Ed.), secs. 253, 254; *State v. Jersey City,* 54 N. J. L. 49, 22 Atl. Rep. 1053.)

"With respect to the public domain, the Constitution vests in Congress the power of disposition and of making all needed rules and regulations. That power is subject to no limitations. Congress has the absolute right to prescribe the times, the conditions, and the mode of transferring this property, or any part of it, and to designate the persons to whom

the transfer shall be made. No state legislature can inter-
fere with this right or embarrass its exercise; and to prevent
the possibility of any attempted interference with it, a pro-
vision has been usually inserted in the compacts by which
new states have been admitted into the Nation, that such in-
terference with the primary disposal of the soil of the United
States shall never be made." (*Gibson v. Chouteau*, 13 Wall.
92-99; *Van Brocklin v. Tennessee*, 117 U. S. 168; *Irvine v.
Marshall*, 20 How. 558-566; *Wilcox v. Jackson*, 13 Pet.
275.)

"A state cannot by its legislation restrict or affect the au-
thority of the officers of the United States land department
in the disposition of the public lands of the United States or
withhold from the grantees any of the incidents of the trans-
fer of the Government title." (*Peyton v. Desmond*, 129
Fed. Rep. 10; *Wilcox v. Jackson*, 13 Peters 516; *Irvine v.
Marshall*, 20 How. [U. S.] 563-567; *Gibson v. Chouteau*,
13 Wall. 93, 99, 104.)

RESPONDENT'S POINTS.

The statute under which the right of eminent domain may
be exercised was in letter as well as spirit complied with.
While the courts will be satisfied with a "substantial" or
"full" and "fair" compliance with the statute, plaintiff did
more. (*Brown v. Macfarlane*, 19 App. Cas. [D. C.] 525;
*Railroad v. Bear*, 43 Fla. 319; *Greaves v. Middletown*, 137
Ind. 400.)

"Where notice was required to be given to the 'owner, oc-
cupant or agent of land,' notice to either was held sufficient
to bind the land." (*Porter v. Stout*, 73 Ind. 3; *Ryder v.
Horsting*, 130 Ind. 104.) "The omission of any proper
party will not invalidate the proceeding as against such per-
sons as are made parties. The only consequence is that as
against the omitted persons the condemnation will be nuga-
tory." (7 Enc. of Pl. and Pr., p. 504; 2 Lewis, Em. Dom.,
sec. 339; *Dodge v. Railroad*, 20 Neb. 276, 29 N. W. 937.)

Even a settler upon public lands of the United States or a
person who has pre-empted land and is proceeding lawfully

to perfect his title, has such an interest in the land that he can receive compensation therefor, and such interest may be condemned under the statutes of eminent domain. *Railroad v. Johnson,* 16 Pac. 125; *Railroad v. Gould,* 21 Cal. 255; *Enoch v. Railroad,* 6 Wash. 393.)    Damages to the mere possession of an occupant of the public domain must be compensated for.    (14 Statute, U. S., 251; 18 Fed. Rep. 1774.)

If bona fide purchasers from the government had pre-empted the land before it was selected by the state, the application of the state would be rejected, but the title, when the state makes selection of lands that have not been pre-empted or taken under any law of the United States and are non-mineral, passes as of the date of the act, and while a patent is not necessary it may be entirely proper. (*Wright v. Roseberry,* 121 U. S. 488; *Spencer v. French,* 21 Howard 228; *Shepley v. Cowan,* 91 U. S. 330; *McCreery v. Haskell,* 119 U. S. 329; *Railroad v. Price County,* 133 U. S. 505; *Langdeau v. Hanes,* 88 U. S. 521 [21 Wall.]; *Byers v. Neal,* 43 Cal. 215; *Ison v. Nelson Co.,* 47 Fed. 200.)

STATEMENT OF FACTS.

This was a proceeding instituted by Brigham City against the defendant for the purpose of condemning a right of way over certain lands for a pipe line.   It is alleged in the complaint, substantially, that the pipe line is being constructed by the plaintiff to convey water for an electric light plant owned and controlled by the municipality; that the pipe line runs across land occupied by the defendant, and claimed by him "by virtue of a certain state contract of sale;" that the land sought to be condemned is necessary for a public use, the width desired being four rods; that without it the plant cannot be completed, and injury will result to the municipality and its inhabitants; that the petitioner has been and is now unable to agree with the defendant upon a price for the right of way; that he refuses to sell the use of the same at any price; that it is the intention, on the part of the city, to complete the plant in good faith; and that all the preliminary steps required by law, to institute proceedings, have been

taken. The location of the right of way, and the value of the land to be condemned are also alleged. To these allegations the defendant, in his answer, entered a general denial. At the trial, upon the first witness being sworn, the defendant objected to proceeding upon the merits, basing the objection on the ground that the complaint failed to confer jurisdiction upon the court to proceed to condemn the land because no allegation therein contained, "as a party, the name of the owner of the land," as required by statute where the owner is known. The objection was overruled, and the court proceeded with the trial. The point, of want of jurisdiction, was again made by motion for nonsuit and dismissal of the action, at the close of the plaintiff's testimony, upon the grounds that the evidence failed to show that the defendant, at the commencement of the action, had any title or interest in the land sought to be condemned; that as shown by the evidence, the sole owner and the one entitled to the possession, was the United States; that it was shown that the owner had not been made a party to the action; and that it affirmatively appeared from the evidence that the defendant "never, at any time, either at the commencement of the action or down to the time of making this motion, had any interest or claim upon the land sought to be condemned, which vested this court with any jurisdiction to make any order or judgment" respecting the land. The motion was denied, and upon the defendant declining to recognize the jurisdiction of the court and to present any evidence upon the question of damages, stating that to be the only issue that could be determined, after the denial of the motion for nonsuit and of dismissal, and claiming he was not entitled to damages and that the court had no jurisdiction to assess any to him, the court decided that the property was subject to condemnation and necessary for the public use for which it was sought to be condemned. Findings of fact were made in accordance with the allegations of the complaint, the court, among other things, finding, "that said land, at the time plaintiff began this suit, was subject to the right of eminent domain, and said defendant, George R. Chase, was the owner and occu-

pant thereof and had such an interest, property, title, and right therein as was subject to condemnation, and was and is a proper and necessary party to said action." Damages in the sum of $25 were awarded to the defendant, the amount of land condemned being 4.27 acres.

BARTCH, C. J., after stating the facts, delivered the opinion of the court.

The decisive question presented, upon this appeal, is whether the appellant had, at the commencement of these proceedings, such a claim to and interest in the property, as vested the court with jurisdiction to adjudicate the matter in controversy as to him. The appellant insists that he had no interest in the premises sought to be condemned; that the title thereto, at the commencement of the proceedings, was in the United States; that as the right of eminent domain could not be exercised against the government, no jurisdiction could be obtained to condemn the right of way by suit against the defendant; and that therefore the proceedings and judgment are void. On the other hand, the respondent contends that, notwithstanding the fact that, at that time, the legal title to the land in controversy had not passed from the United States, the appellant had such an interest and equitable ownership in the land as could be condemned for public use under our laws.

From the evidence relating to the question thus presented and facts found by the court it appears that at the time of the commencement of this action the municipality was constructing an electric light plant, for the purpose of lighting its streets and furnishing light to its inhabitants. The plant was to be operated by water power and the water for that purpose had to be conveyed from Box Elder creek, a mountain stream, by means of a pipe line, which was constructed along the mountainside in the canyon. In order to preserve the grade of the pipe line, it was necessary to cross the land in controversy, which was claimed by and in the possession of the defendant, and was mountainous land, steep and rocky. On June 30, 1898, the defendant Chase filed a

homestead entry on a tract of government land which included the land sought to be condemned. On February 4, 1899, he relinquished and canceled his homestead entry. The relinquishment he delivered to the state board of land commissioners and entered into an agreement with the state wherein the state agreed to file his relinquishment and select the land, embraced within the homestead entry, under its grant of lands from the United States for the purposes of an agricultural college; to preserve the defendant's rights to the land; and to sell it to him at $1.25 per acre, one-tenth of the amount to be paid down and the balance in nine annual payments, the defendant agreeing to purchase the same and pay therefor accordingly. Thereupon, on the same day, the state land board filed, in the land office, the relinquishment and a selection of that land made by the board under the Agricultural college land grant. Thereafter, on February 8, 1899, the local land office approved and allowed the selection and forwarded the same to the General Land Office at Washington, and the state land board filed with its records the defendant's agreement and application to purchase. On September 16, 1902, these proceedings for condemnation were instituted, by the filing of the complaint and service upon the defendant, and an order made permitting the plaintiff to occupy the premises for the purpose of constructing its pipe line. At that time the defendant was in possession of the tract, had worked upon it and made some improvements on part of it, but not on the strip in controversy, among the same being a small ditch to irrigate a parcel of his land. He had some fruit trees and a small vineyard thereon, claimed to be the owner of the tract and exercised exclusive control over it. The plaintiff had offered to purchase the right of way from him but he refused to sell it. On January 19, 1903, the Box Elder Power & Light Company was incorporated under the laws of the state of Wyoming. Its articles of incorporation were filed in this state on February 18th following. The defendant ever since its organization and at the time of the trial was the secretary of that corporation, and on the 1st of June, 1903, he assigned all his interest in

that land to the corporation and filed the assignment with the state land board. On June 30, 1903, the selection of the land by the state was approved by the Commissioner of the General Land Office, and on July 9th following, by the Secretary of the Interior. Thereafter the register's certificate of purchase, as provided by law, was issued to the corporation, and on September 4, 1903, the corporation having paid in full, the state conveyed the land to it by patent. On March 9, 1904, the defendant filed his answer in this case.

Had, then, the defendant, under the facts and circumstances thus appearing, at the time of the institution of this proceeding, such an interest in the land as was the subject of condemnation under the statute, relating to eminent domain; or, in other words was he an owner or claimant of the property within the meaning of the statute, and was the petition or complaint sufficiently specific in alleging ownership? We think the answer must be in the affirmative.

The statute, in section 3594, Revised Statutes 1898, provides:

"The complaint must contain: (1) The name of the corporation, association, commission, or person in charge of the public use for which the property is sought, who must be styled plaintiff. (2) The names of all owners and claimants of the property, if known, or a statement that they are unknown, who must be styled defendants. (3) A statement of the right of the plaintiff. (4) If a right of way be sought, the complaint must show the location, general route, and termini, and must be accompanied with a map thereof, so far as the same is involved in the action or proceeding. (5) A description of each piece of land sought to be taken, and whether the same includes the whole or only part of an entire parcel or tract. All parcels lying in the county and required for the same public use may be included in the same or separate proceedings, at the option of the plaintiff, but the court may consolidate or separate them to suit the convenience of parties."

Considering the complaint and the proof with reference to this enactment, the principal question is as to what interest in and dominion over property constitutes a person an owner or claimant. In this instance the complaint alleged occupancy by the defendant and claim of property by virtue of a certain contract, and while the allegations, in this regard,

were not as artistically drawn as they might have been, they were, doubtless, in the absence of a specific demurrer or plea on this point, sufficient to raise the issue of ownership upon the defendant's denial, and, so far as the allegations of own- ership were concerned, to confer jurisdiction upon the court to hear the case.

Was, then, the evidence of such character as to warrant the court in holding that the defendant, when the suit was brought, was the owner or claimant of the land, and in ren- dering judgment of condemnation? It seems clear that it was. The proof shows that he had made a homestead entry upon the land, and that when the complaint was filed and the action commenced he was in possession of the land, claimed it as his own, worked upon it, had made some improvements upon it, constructed an irrigating ditch, planted fruit trees and a small vineyard, and, upon being approached with an offer to purchase a right of way for the pipe line, refused to sell or permit the construction of the pipe line over the land. These things were all indicative of ownership. To all ap- pearances his dominion was exclusive and absolute, and his claim of being the owner unquestioned. It is true he had in fact relinquished his homestead entry, but this was under the agreement with the state whereby he had the right fin- ally to secure the title to the premises in fee. Under that contract, upon the selection of the land by the state, by virtue of its grant from the general government and the approval of the selection by the proper officers, his right to acquire the land became a vested right subject only to be defeated by a failure, on his part, to perform the contract. Created by his entry and contract and the acts which led up to the contract, that right constituted, at least, an equitable interest which the owner could sell or assign, although he had not yet acquired the legal title to the land, and which he after- wards did assign to a private corporation, of which he was secretary; and it perfected the title to the property by per- forming his covenants in the contract. That he had the law- ful right to assign his interest in the land or that his assign- ment to the corporation was lawful and transferred his in-

terest is not controverted. Having been then the owner and claimant of an interest, which was the subject of lawful disposition, he was the owner and claimant of an interest subject to disposition under the laws of eminent domain.

The word "owner" is a comprehensive term, and is applied to any person who has dominion of a thing, real or personal, corporeal or incorporeal and right of enjoyment and disposition. (Bouvier.) When the term is employed in the statutes, relating to eminent domain, to designate the persons, who are to be made parties to the proceedings, and who are entitled to receive compensation for land taken against their will, it should be held to include all those who have any lawful interest in the property to be condemned. So the term "claimants" should be held to embrace any person who has an interest in the land and whose rights will be affected by a judgment of condemnation. Doubtless this is the sense in which the Legislature used the terms in section 3594, above quoted.

"The word owner in statutes," says Mr. Lewis in his work on Eminent Domain, vol. 2, section 335, "when used to describe those to whom compensation should be made or who should be made parties to proceedings, has been held in a general way to include all persons having an interest in the land to be taken. More particularly, the term owner has been held to include lessees, whether for years or from year to year, tenants for life, mortgagees, vendees in possession, and the owner of a ground rent."

And in section 341, same volume, the author, referring to constitutional provisions declaring that private property shall not be taken for public use without just compensation, and that no person shall be deprived of his property without due process of law, says:

"The word 'property,' therefore, in these provisions should be held to include every valuable right and interest which a person can have in or appurtenant to land. Due process of law requires that the owner of any such right or interest should have a reasonable opportunity to be heard upon the question of compensation before he can be deprived thereof for public use. This is a matter of constitutional right, and not dependent upon the will of the Legislature. Statutes should be so construed, if possible, as to harmonize with the Constitution, and, consequently, words

descriptive of parties to proceedings or of the persons entitled to compensation or notice should be held to include the owner of any such right or interest as above indicated. Thus the word 'owner' may always be so construed without any violence whatever to its ordinary meaning, and we do not call to mind the language of any statute which is incapable of such construction."

In *Gerrard v. O., N. & B. H. R. R. Co.*, 14 Neb. 270, 15 N. W. 231, it was decided:

"The word 'owner' as used in the statute applies to any person having an interest in the estate."

In *State ex rel. Trimble v. Superior Court*, 31 Wash. 445, 72 Pac. 89, 66 L. R. A. 897, a case very like the one at bar, the state of Washington owned certain "tide and shore lands" and Trimble held, by assignment, an executory contract which had been made with the state through its officers for the purchase of a part of those lands, and possession of the land in controversy had been delivered to him by his assignor. Afterwards, while the contract was in force, a railroad company sought to condemn the land by instituting suit against Trimble, under a statute which, among other things, provides that the petition shall describe the property sought to be appropriated, and shall set forth "the name of each and every owner, encumbrancer, or other person or party interested in the same, or part thereof, so far as the same can be ascertained from the public records," etc. The proceedings were resisted upon substantially the same grounds as are here urged by the appellant. The Supreme Court, in the course of an opinion affirming the order of condemnation, said:

"While it is true that the state holds the naked legal title to these tide lands as trustee for the relators and their assigns, and is, to that extent, interested therein, it is also true that it is no more concerned in the condemnation suit than it would be in a voluntary transfer by the relators of their interest to the respondent herein. The state cannot be involuntarily deprived of its title by condemnation or otherwise, and the fact that it was not made a party to the proceeding cannot affect its rights or those of the relators in any manner or degree whatever. All that the relators are entitled to is just compensation for their interest in the land, and such compensation can readily be determined without regard to the rights of the state or any other person or party."

(*Kerr v. Day*, 14 Pa. St. 112; *Com'rs of Smith Co. v. Labore*, 37 Kan. 480, 15 Pac. 577; *Haughwout v. Murphy*, 22 N. J. Eq., 531; *Ryder v. Horsting*, 130 Ind. 104, 29 N. E. 567, 16 L. R. A. 186; *B. & O. R. R. Co. v. Thompson*, 10 Md. 76; *Watson v. N. Y. Central R. R. Co.*, 47 N. Y. 157; *Burlington, K. & S. W. R. Co. v. Johnson* [Kan.], 16 Pac. 125; *Northern R. R. Co. v. Gould*, 21 Cal. 255.)

Whether or not the appellant was the sole owner of the land in question, is not material. That all the owners of the property sought to be condemned are not made parties is not fatal to such an action. This seems clear from the statute which provides that

"All persons in occupation of, or having or claiming an interest in, any of the property described in the complaint, or in the damage for the taking thereof, though not named, may appear, plead, and defend, each in respect to his own property or interest, or that claimed by him, in like manner as if named in the complaint." (Section 3595, Revised Statutes 1898.)

Every party who is in possession of, or who has an interest in, the property, thus having the right to appear and defend, whether named in the complaint or not, it would be a strained construction that would hold the omission of the name of one such party fatal to the action, so that the court would be without jurisdiction to proceed as to those named and made parties. We are of the opinion that, when, in an action of this character, any owner or claimant is made a party, the court has jurisdiction to proceed, as to his interest, whether all the owners, or claimants, or occupants, are made parties or not. Where such persons are not all named as parties or not served, the judgment of condemnation will simply be a nullity as to those omitted.

"The omission of any proper party will not invalidate the proceedings as against such persons as are made parties. The only consequence is that as against the omitted persons the condemnation will be nugatory." (7 Ency. Pl. & Pr. 504.)

In *State (Nat. Ry. Co.) v. Easton & A. R. R. Co.*, 36 N. J. Law 181, it was said:

"The proceeding for condemnation is strictly between the company and the persons who are made parties to it. The omission of the owner of any estate in the lands, or any part owner of the fee, or of the holder of

any lien, or encumbrance thereon, whose estate or interest is essential to a perfect and indefeasible title in the company, will not invalidate the proceedings as against such persons as are made parties. The consequence will be merely that as against such omitted persons, the condemnation will be nugatory. To this extent the company proceeds at their peril." (2 Lewis, Eminent Domain, section 339; *Porter v. State,* 73 Ind. 3; *Dodge v. O. & S. W. R. R. Co.,* 20 Neb. 276, 29 N. W. 936; *New Orleans, M. & T. R. R. Co. v. Southern & A. Tel. Co.,* 53 Ala. 211; *Milhollin v. Thomas,* 7 Ind. 165; *California Southern R. Co. v. Colton L. & W. Co.,* (Cal.), 2 Pac. 38; *St. L., L. & D. R. R. Co. v. Wilder,* 17 Kan. 239; *Columbus & W. Ry. Co. v. Witherow,* 82 Ala. 190, 3 South. 23.)

Nor did the failure, after the assignment by the defendant of his contract with the state to the Wyoming corporation, to make that corporation a party, abate the action, or affect the judgment as to the defendant. Where, during the pendency of a suit, a party thereto transfers his interest, "the action or proceeding may be continued in the name of the original party." (Section 2920, Rev. St. 1898.)

We do not deem it important to discuss any other question presented. The record presents no reversible error.

The judgment is affirmed, with costs.

McCARTY and STRAUP, JJ., concur.