STATE HIGHWAY COMMISSION of Wyoming, Appellant (Plaintiff below),

v.

TRIANGLE DEVELOPMENT CO., a Wyoming Corporation, and Leo and Genevieve Aimonetto, Appellees (Defendants below).

No. 3038.

Supreme Court of Wyoming.

March 20, 1962.

Norman B. Gray, Atty. Gen., Glenn A. Williams, Asst. Deputy Atty. Gen., and Robert L. Duncan, Special Asst. Atty. Gen., for appellant.

Beatrice Raymond, Newcastle, H. F. Fellows and Bangs, McCullen, Butler & Foye, Rapid City, S. D., for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This is an eminent domain case in which the State Highway Commission of Wyoming, as plaintiff, has condemned land in and adjacent to Newcastle, Wyoming, for an access-facility highway, such highway to be a portion of U. S. Highway 85. One tract, owned by Leo Aimonetto and Genevieve Aimonetto, involves 2.16 acres of undeveloped land which is not inside the city limits of Newcastle but is just across U. S. Highway 16 from a commercial area that is in the city. The other tract involves 10.36 acres, owned by Triangle Development Co., in a partially developed subdivision where only a few homes or other improvements have been completed.

Court-appointed commissioners made a certificate of award granting the Aimonettos $3,510 for their 2.16 acres and the Triangle Development Co. $5,180 for its 10.36 acres. The State filed exceptions to both awards and Mr. and Mrs. Aimonetto filed exceptions to their award. The State also made a demand for a trial by jury. In each case the owners filed a written answer. Aimonettos claimed that they had received a bona fide offer of $20,000 for their land and that the offer was rejected because they were asking more money for it. The Triangle Development Co. alleged

that the land sought to be taken from it consisted of land which had been platted into lots and blocks and included within the incorporated limits of the City of Newcastle. It claimed that these city lots were worth $250 each.

All parties agreed at pretrial conference that the two cases would be tried at the same time and before the same jury. Such a trial was had commencing November 17, 1960, at the conclusion of which the jury awarded compensation to Leo Aimonetto and Genevieve Aimonetto for their 2.16 acres in the amount of $11,416. It awarded compensation to the Triangle Development Co. in the amount of $28,860 as the value of its property, with an additional allowance of $5,000 for severance damage.

From these awards the Highway Commission has appealed claiming certain errors in the trial of the case with respect to the admission of evidence and claiming that bias and prejudice was displayed by the trial judge. It also claims that an erroneous addition of interest was made in the judgment entered by the court on the verdicts.

With respect to the larger tract of 10.36 acres, it is apparent from the record that the owner in its answer only claimed a value of $250 for each lot. There were 36 lots taken entirely and portions of 38 other lots. On the basis of a $250-lot value as claimed by the owner, 74 full lots would have a total value of $18,500. Of course, 36 full lots and 38 partial lots would have a somewhat lower value. Nothing was claimed by the owner in its answer for additional severance damages.

On the face of the record then, we are confronted with a situation where the award of the jury is far in excess of the amount claimed by the landowner, the total award being for $33,860 while the claim of the owner was for something substantially less than $18,500. In that regard it is settled in this jurisdiction that when an eminent domain award exceeds the amount claimed by a landowner, it may be set aside. Bliss v. Board of County Commissioners of Laramie County, 70 Wyo. 42, 244 P.2d 508, 509. See also 29 C.J.S. Eminent Domain § 310, p. 1343.

Notwithstanding this obvious situation, however, the State has not in its appeal urged as a ground for reversal that the award is excessive, and yet it is clear that it actually considers the award excessive. Otherwise it would not be prosecuting this appeal and it would not have appealed from the commissioners' award of $5,180.

*The 2.16-Acre Tract*

Turning our attentions to the assignments of error which are set out by appellant in its statement of points, we will consider first a claim that the trial court committed error by admitting into evidence, over the objections of the State, Exhibit B which was a written offer to purchase the land of Leo and Genevieve Aimonetto. This exhibit was a letter written by Pioneer Real Estate Company of Rapid City, South Dakota, offering to buy the property owned by Aimonettos for $20,000. Aimonetto testified that the offer was received but rejected. The exhibit and testimony concerning it were received into evidence over the State's objections.

A statement made by the trial judge and appearing in the record with reference to his decision on this point indicates that he was aware of a conflict in the authorities on the question as to whether such evidence is or is not admissible. Holding that he would overrule the objection and allow the evidence to be admitted, the judge stated: "I am going to find out and arrange it so we can find out in the State of Wyoming"—meaning, we assume, that he wishes to find out what the rule in Wyoming is to be with respect to the admission of evidence such as is here in question.

Referring to this particular specification of error, counsel for the appellees state that in an annotation appearing at 7 A.L.R.2d 781 there is a complete compilation of cases concerning this point. The writer of appellees' brief points out, however, that there is no Wyoming case deciding the question.

The compilation referred to commences at 7 A.L.R.2d 784 with the statement that:

"The pronounced tendency of most of the reviewing courts which have dealt with the matter has been to rule against the admissibility upon the issue of the market value of real property of evidence as to mere unaccepted offers to purchase or to sell that or similar property at a certain price."

In a subsequent paragraph the annotation goes on to say, "In a few jurisdictions, however, bona fide offers to purchase real property have been considered to be admissible." Under the subject View of Inadmissibility, on page 785, the annotation reads: "In by far the greater number of the cases, particular evidence showing that a purchase offer of a certain amount has been made or received * * * has been considered to be inadmissible."

In his oral argument before this court, appellees' attorney frankly concedes that the annotation cited is correct in its conclusions to the effect that the majority rule is that evidence of an offer to purchase is inadmissible as proof of market value in eminent domain cases. He suggests, notwithstanding the weight of authority against him, that Wyoming adopt the minority rule, which he contends is based upon better reason. In support of his position he points to People v. Cava, Cal.App., 314 P.2d 45, and argues that it contains one of the best decisions on this point.

We do not find the decision relied upon persuasive, however. It is a decision made by the District Court of Appeal, First District, Division 2, in California. It is based upon the assumption that the California Supreme Court had, in the case of County of Los Angeles v. Faus, 48 Cal.2d 672, 312 P.2d 680, changed the California rule with respect to the admissibility of offers to buy. We do not so construe the ruling in the Faus case. The California high court in that case was dealing exclusively with this question: "In a condemnation proceeding, is evidence of the prices paid for similar property in the vicinity * * * admissible?" No mention was made of the matter of unaccepted offers to buy.

█ Wyoming already adheres to the principle that other sales of similar property are evidence of value. We read in the Faus opinion merely a pronouncement to the effect that California was ready to forsake the minority and join with the majority of other jurisdictions on the matter of admitting evidence of sales of similar properties. We find in such opinion nothing which would be helpful to the landowners in the case before us.

No other cases that are in point are cited by appellees, but they do set out a quotation from 2 Wigmore on Evidence, § 463, pp. 503 et seq. (3d ed.), which was referred to in both the Faus and Cava opinions. Under the subject entitled Value or Sales of Similar Land, Chattels, or Services, Wigmore speaks of the standard of value. He says that when the conduct of others indicating the nature of a salable "article" consists in offering this or that sum of money, it creates the phenomena of value, so-called. He then continues in the following paragraph by saying, "But the evidential question is not concerned with the * * * standard of value."

Referring specifically to the question of whether an unaccepted offer of purchase may be looked to as determining value, Wigmore classifies it with other questions in connection with which he indicates that "it would be impracticable to consider them here." At that point he goes into a consideration of the question as to whether a sale of other property is admissible as evidence of the value of the property in question.

As we construe the Wigmore treatise in its entirety, it fails to support the contentions of the landowners in the instant case. On the contrary, there is in the section cited, on pages 508–509, an acknowledgment that, "The doctrine of admission, moreover, is sometimes recognized for evidencing the value of services or chattels, when not recognized for land-value." We notice also that it is pointed out in 4 Nichols, Eminent

Domain, § 12.31 [1] and [2], p. 83 (4th ed.), that the fair market value of articles of a certain character can be determined with almost mathematical accuracy, while the market value of a piece of real estate is not ordinarily the subject of such ready computation.

We find good reason for the majority point of view in excluding evidence of offers to purchase in condemnation cases. The clear weight of authority and precedent on the point is demonstrated in the A.L.R. annotation referred to above. Nothing would be gained by trying to summarize or review the cases included in this annotation, but we do wish to point out some of the reasons which have been assigned for holding evidence of offers inadmissible.

In Brock v. Harlan County, 297 Ky. 113, 179 S.W.2d 202, 204, the following reasons were enumerated for incompetency of evidence pertaining to an offer and rejection:

(1) The evidence is too uncertain, shadowy and speculative to form any solid basis for determining the value of the land.

(2) The offer may not have been made in good faith.

(3) It is a species of indirect evidence of the opinion of the person making the offer as to value.

(4) There is no opportunity to cross-examine the offerer.

(5) He may have wanted the land for a particular purpose disconnected with its value.

(6) He may have been willing to engage in a speculation and take chances that some new use of the land might prove profitable in the end.

Regarding the question as to whether evidence of offers should be received, the author in 4 Nichols, supra, § 12.311 [2], p. 88, says:

"It is, at most, a species of indirect evidence of the person making such offer as to the value of the land. He may have so slight a knowledge of the subject as to render his opinion of no value. Oral and not binding offers are so easily made and refused in a mere passing conversation, and under circumstances involving no responsibility on either side, as to cast no light upon the question of value, and they are unsatisfactory, easy of fabrication and even dangerous. While all of these objections might not apply in every case it is thought best by most courts to reject evidence of offers altogether."

For additional text authority to the same effect, see 18 Am.Jur., Eminent Domain, § 351, p. 996. See also State Through Department of Highways v. McDuffie, 240 La. 378, 123 So.2d 93, 98, to the effect that such evidence is inherently unreliable; and Ruth v. Department of Highways, Colo., 359 P. 2d 1033, 1035, to the effect that such evidence is not relevant to establish the value of property to be taken by condemnation.

Offers of sale and purchase of land under condemnation and of similar land in the vicinity has been held inadmissible in some jurisdictions, partly because of the difficulty in establishing their bona fide character and partly because such evidence places before the jury an absent person's declaration or opinion as to value, while depriving the adverse party of the benefit of cross-examination. State By and Through State Highway Commission v. Morehouse Holding Company, Or., 357 P.2d 266, 267; State v. Cerruti, 188 Or. 103, 214 P.2d 346, 352, 16 A.L.R.2d 1105.

From what has been said on the subject, we conclude that the trial court erred in admitting into evidence the offer of Pioneer Real Estate Company to purchase the land of Leo and Genevieve Aimonetto. The case pertaining to that land must therefore be reversed and a new trial ordered.

*The 10.36-Acre Tract*