Burchell *v.* Commonwealth.

---

DAVID M. BURCHELL & another *vs.* COMMONWEALTH.

Essex.    March 10, 1966. — April 1, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Evidence,* Of value; Judicial discretion; Opinion: expert.    *Witness,* Expert witness.

In a proceeding for assessment of damages for a taking by eminent domain of a part of the petitioners' land, it was within the discretion of the judge to admit evidence of the price in a sale of remaining land of the petitioners thirteen months after the taking where there was nothing to show that such price reflected an enhancement of the value of the remaining land due to the taking.    [490]

Where it appeared in a proceeding for assessment of damages for a taking of land by eminent domain that an expert witness for the petitioners had personally examined the land, its boundaries, and the route of a projected highway for which the taking was made, his testimony as to the amount of the damages was not to be struck out merely because he also testified that he had made only an "informal" appraisal of the land and was not testifying as an appraiser but as the broker in a subsequent sale of remaining land of the petitioners.    [491]

PETITION filed in the Superior Court on December 22, 1961.

The case was tried before *Noonan,* J.

*Edward W. Brooke,* Attorney General, *& Alfred L. Podolski,* Special Assistant Attorney General, for the Commonwealth, submitted a brief.

No argument or brief for the petitioners.

WILKINS, C.J.   The petitioners, husband and wife, bring this petition for the assessment of damages because of a partial taking for highway construction on December 27, 1960, of about five acres of a parcel of their land in Haverhill containing about sixteen and one-half acres.   The jury returned a verdict of $2,500 for the petitioners.   The Commonwealth's exceptions are to the admission of evidence.

1.   The male petitioner (hereinafter called the petitioner) testified that he sold fourteen and one-half acres of his remaining land on January 13, 1962, to a private party for the sum of $14,400.   The Commonwealth stated as the grounds of objection that the sale was of part of the original land made thirteen months after the taking, and, if used at all, should be used to establish the fair market value of the land remaining after the taking, and not before. Subject to the Commonwealth's exception, the petitioner testified that in his opinion the fair value on the date of the taking was $4,980 or $1,000 an acre.

An expert, called by the petitioners, testified that in his opinion the value of the land before the taking was $33,500 and after the taking $28,520.   Thirteen months after the taking he had been the broker on a sale from the petitioners to a private party of most of the petitioners' land remaining after the taking.   On cross-examination the witness testified that his "value before taking" was predicated on $1,000 an acre, because he knew he could sell the land at that price, although he knew of no land in Haverhill which had sold for $1,000 an acre at or before the time of the taking.   He further testified that he had not made a formal appraisal of the property, but had made an informal one. He explained what he meant by these terms.   In the spring of 1961, directly after the petitioner had informed him that the Commonwealth had sent a notice of the taking, he

walked all over the land which had been or was about to be taken, and noticed the stakes of the survey. Again in the fall, when the survey parties were out in full force, one was able to determine about where the road was going to be. A motion by the Commonwealth to strike the testimony on the ground that the witness did not make an appraisal was denied. Later the witness testified that he was not testifying as an appraiser but as a broker of record on the sale by the petitioners of some of their remaining land thirteen months after the taking.

The admission of evidence tending to show the value of comparable land was in the discretion of the trial judge. *Iris* v. *Hingham,* 303 Mass. 401, 408–409. *H. E. Fletcher Co.* v. *Commonwealth, ante,* 316, 324–326. *Zambarano* v. *Massachusetts Turnpike Authy., ante,* 485, 486–487. As in the *Zambarano* case, *supra,* there being nothing in the record to indicate that there had been an enhancement in value because of the taking, the case of *Cole* v. *Boston Edison Co.* 338 Mass. 661, 665–666, is not in point.

The statement in G. L. c. 79, § 12, as amended by St. 1959, c. 626, § 4, that "The damages for property taken under this chapter shall be fixed at the value thereof before the recording of the order of taking . . ." does not bar the admission of evidence of subsequent sales which the judge, without abuse of discretion, rules to be material as the value at the time of taking. This is clear from *Roberts* v. *Boston,* 149 Mass. 346, 354, where it was said, "The lands sold were near to that of the petitioner, and similar to it, and similarly situated. One sale was about five months, and the other more than twenty months, after the taking of the petitioner's land. The mere lapse of time after the taking did not render the evidence of the sales incompetent, and, as the circumstances appear in the evidence, the discretion of the court seems to have been rightly exercised in admitting the evidence."

It was not plainly erroneous, therefore, to refuse to exclude on this ground the testimony of the petitioner (*Southwick* v. *Massachusetts Turnpike Authy.* 339 Mass. 666, 668–669) or that of the expert.

The additional objections to the latter's testimony are without merit. The expert had personally examined the land, its boundaries, and the route of the projected road. He was not "destitute of the necessary qualifications." See *Maher* v. *Commonwealth,* 291 Mass. 343, 349. His layman's characterization of his appraisal as "informal" or of his testimony as being that of a broker and not as that of an appraiser does not affect its admissibility. The motion to strike was rightly denied.

*Exceptions overruled.*