MILTON ALDEN *vs.* COMMONWEALTH.

Worcester.    May 2, 1966. — June 8, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Evidence,* Of value.  *Eminent Domain,* Damages.  *Damages,* Eminent domain.

In a proceeding for assessment of damages resulting from a taking by eminent domain, for a new interstate highway and its interchange ramps with an existing highway, of a strip through the petitioner's land which left him with acreage on both sides of the new highway or its ramps, where the trial judge admitted evidence of a sale of adjacent land soon after the taking and should have admitted evidence that the "dominant factor" in such sale had been the proximity of the land sold to the interchange, and there was testimony by the respondent's experts that the project had substantially enhanced the value of land in the vicinity of the interchange, it was prejudicial error to permit the jury to consider the evidence of such sale as evidence of the value of the petitioner's land prior to the taking.

PETITION filed in the Superior Court on August 20, 1962. The case was tried before *Tomasello, J.*

*Sumner W. Elton,* Special Assistant Attorney General, for the Commonwealth.

*Charles S. McLaughlin* for the petitioner.

WHITTEMORE, J.    These are the Commonwealth's exceptions in a proceeding under G. L. c. 79 resulting in a verdict for the petitioner.  On December 20, 1961, the Commonwealth took portions of the petitioner's land, consisting, before the taking, of about 200 acres, on the south side of Route 9 and the west side of Washington Street in Westborough.  The taking was for purposes of Interstate Route 495 and its interchange with Route 9.  After the taking the petitioner had left 145.8 acres adjacent to the new highway or its interchange ramps on the west and 16.3 acres adjacent thereto on the east.

The preliminary hearing required by G. L. c. 81, § 5, was held on February 3, 1960.  Exhibits show that the actual takings at the interchange with Route 9 occurred substantially as they had been proposed at the hearing.

The judge admitted evidence of four sales of nearby land. One of the sales was of a parcel of 60.4 acres on Route 9, adjacent to the petitioner's land. The purchase was by Massachusetts Electric Company for a computer center. The agreement was signed December 26, 1961, and title was taken April 2, 1962. The sale price ($275,000) was admitted de bene subject to the Commonwealth's exception and with the statement "this has to be tied up with other evidence that may evolve . . . later." A motion to strike this evidence and that of the other sales was denied after the parties had rested. The computer center as constructed was located five or six hundred yards from the interchange between Route 9 and Route 495.

Three expert witnesses for the Commonwealth testified that in their opinion there had been enhancement in the value of the petitioner's land as a result of the taking so that the damage to the petitioner from the loss of some of his land had been more than offset. Their figures for the value of all the land before the taking and the remaining land after the taking were, respectively, $136,250 and $490,000; $98,000 and $246,000; $152,000 and $363,000.

The Commonwealth unsuccessfully sought to show through the chief of the real estate management section of the New England Power System, which included Massachusetts Electric Company, that proximity of the site to Route 495 was the dominant factor in its acquisition and that the witness first had knowledge that the intersection of Routes 9 and 495 would be where it now is in the latter part of 1959 or early part of 1960.[1]

---

[1] The witness would have testified "that he was in charge of all negotiations from the beginning to the end which culminated on the basis of his recommendation in the purchase of that piece of property by the Massachusetts Electric Company; that his instructions in the beginning, in the latter part of 1960, were to investigate for suitable sites for the computer center . . . . He was instructed to find sites for that installation along Route 495; that at that time he knew the probable course of 495 and made investigations at various points along that course in search of a suitable site for this computer center; that as a result of his investigations he finally came upon this particular site on the southerly side of Route 9 which was actually purchased in April, 1962 by the Massachusetts Electric Company; that throughout the negotiations a location on or near to Route 495 was the dominant consideration in the location of the computer center; that another factor at the time was the cross-over which existed in front of the land; that this was a special purpose installation, peculiar to the operations of Massachusetts Electric Company."

An expert witness for the petitioner testified that there was "no enhancement in land values in this vicinity due to the project Interstate 495" and that there was no enhancement in the value of the petitioner's land.   This was because of the division of the property into two parts, one of which was so narrow that it could not be further built upon, the limited access ("one can only come into the property in one way on Route 9"), and the loss of frontage on Route 9.   In his opinion the value of the petitioner's holdings had diminished from $626,000 before the taking to $442,000 thereafter.   He had considered the sale to Massachusetts Electric Company and the three other sales of nearby land on Route 9, by which three adjacent sites opposite to the Massachusetts Electric Company land had been acquired by Home Constructors, Inc. on June 22, 1960, October 16, 1961, and October 16, 1962, for the purpose of completing an assembly of land on the north side of the Turnpike (Route 9).[2]

The petitioner's brief concedes that evidence of sales that reflect an enhanced value resulting from the project should not be admitted as evidence of prior value,[3] but contends that there is "nothing in the record . . . to indicate . . . enhancement."   We disagree.   The testimony of the Commonwealth's three experts, taken with other testimony that should have been admitted, was, we think, evidence of enhancement in the value of land near the interchange.

The testimony of the Commonwealth's experts as to "value . . . before the taking," "value . . . prior to the taking," and "value . . . just prior to the taking" is to be weighed in the light of the established meaning of the words

---

[2] Two of these sales were admitted in evidence in the first instance through the deeds bearing revenue stamps.   Plans accompanied the deeds.   The Commonwealth objected and excepted to the admission of the deeds and plans. The Commonwealth brought out in cross-examination the per acre price of the sale of June 22, 1960, and took no exception to testimony of the specific sale price of the October, 1961, sale.   The Commonwealth took no exception to the admission of the sale price in the October, 1962, transaction.

[3] The brief says, "Obviously, if there had been any evidence that property had enhanced in value as a result of the coming of Route 495, a trial court would not have admitted the evidence."

"value . . . before the . . . taking," as used in G. L. c. 79, § 12, and we think that their testimony was evidence that the project as well as the actual taking had enhanced the value of the land. The rule is, as the judge rightly stated in his charge to the jury, that the words "value thereof before the recording of the order of taking" as used in § 12, mean "before the beginning of the entire public work which necessitates the taking." *Connor* v. *Metropolitan Dist. Water Supply Commn.* 314 Mass. 33, 39–40. *Cole* v. *Boston Edison Co.* 338 Mass. 661, 665.

The proffered evidence of the importance to Massachusetts Electric Company of a location on Route 495 or near an interchange giving access to that road should have been admitted. Taken with the evidence of the Commonwealth's experts, this testimony would have been substantial corroboration for the inference that the taking had increased values in the neighborhood of the petitioner's land. Of course by itself, as the petitioner contends, this testimony of "dominant factor" shows only motivation of the purchaser and not enhancement in value, but in the circumstances it also tended to show that the factors that had caused enhancement in the value of the land of the petitioner had extended to adjacent and nearby property. For the same reasons there should have been admitted testimony that the dominant factor in the acquisition of the sites by Home Contractors, Inc. was location in close proximity to the anticipated interchange of Routes 9 and 495.

In the absence of unusual circumstances, location on or with access to a high speed limited access interstate highway system, even without supporting testimony, strongly suggests enhancement in value. We need not determine whether any inference would be available to the Commonwealth in the entire absence of evidence of enhancement. Here there was such evidence.

The trial judge has wide discretion in determining whether sales offered as comparable will help the jury. *Roberts* v. *Boston,* 149 Mass. 346, 354 (subsequent sales). *Iris* v. *Hingham,* 303 Mass. 401, 408–409. *Congregation*

*of the Mission of St. Vincent de Paul* v. *Commonwealth,* 336 Mass. 357, 359. *H. E. Fletcher Co.* v. *Commonwealth,* 350 Mass. 316, 324–325. We do not rule that a subsequent sale must always be excluded if there is any evidence of enhancement. Compare *Kerr* v. *South Park Commrs.* 117 U. S. 379, 385–387. Conceivably, with careful instructions, knowledge of such a sale would aid the jury in arriving at the prior value of the land. Such a subsequent sale may of course, in any event, be important to show an increase in value of the remaining land resulting from the taking and hence, with proper instructions, admissible to show such enhancement. *Bartlett* v. *Medford,* 252 Mass. 311, 312–313.

We conclude that the evidence of the sale to Massachusetts Electric Company, after the actual taking date, was prejudicial and should have been excluded as evidence of prior value. *Cole* v. *Boston Edison Co.* 338 Mass. 661, 669–670. There were no instructions adequate to bar the use of this sale, or of any of the subsequent sales, as evidence of prior value. Compare *Zambarano* v. *Massachusetts Turnpike Authy.* 350 Mass. 485, 487, and *Burchell* v. *Commonwealth,* 350 Mass. 488, 490, where there was nothing to indicate enhancement.

We need not pause to consider whether exceptions were adequately saved to the admission of any of the three sales to Home Constructors, Inc. The evidence of these other subsequent sales and the testimony of the Commonwealth's experts that they considered those sales in arriving at their opinions do not overcome the prejudice from the admission of the sale to Massachusetts Electric Company. The reasonable inference is that the Commonwealth's experts were using those sales as a basis for their testimony of enhanced value rather than as showing value before the taking. Regardless of how the evidence of those sales came into the case, they were not rightly to be considered as evidence of prior value.

*Exceptions sustained.*