**STATE HIGHWAY COMMISSION of
Wyoming, Appellant (Plain-
tiff below),**

v.

**Porter ROLLINS, Elease Rollins, Gary P.
Rollins, and Joyce Rollins, Appel-
lees (Defendants below).
No. 3811.**

Supreme Court of Wyoming.

June 16, 1970.

James E. Barrett, Atty. Gen., Glenn A. Williams and James D. Douglass, Special Asst. Attys. Gen., Cheyenne, for appellant.

Payson W. Spaulding, Evanston, Clifford L. Ashton, of Van Cott, Cornwall & McCarthy, Salt Lake City, Utah, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Chief Justice GRAY delivered the opinion of the court.

In February 1967 the defendants were the owners of a parcel of farmlands consisting of some 462 acres which defendants utilized as a unit in carrying on a dairying and live-stock-feeding operation. At that time the commission adopted a resolution whereby certain generally described lands, including certain lands of the defendants, were to be acquired for use as rights-of-way for the construction and completion of a segment of Interstate Highway 80 commencing at a point some 9 miles east of Lyman, Wyoming, and running west some 14 miles to a point of connection with that part of I–80 already constructed. For purposes here it was stipulated, in substance, that from February 1967 the commission was committed to construct the highway where it is now constructed and within the then established boundary lines of the rights-of-way. The plans for the project provided for construc-tion of the highway across the approximate center of defendants' parcel and also pro-vided for the construction of a traffic in-terchange at a point on defendants' lands some 4 miles north of Lyman, Wyoming, where I–80 which ran east and west was to intersect with the existing Urie-Carter Highway running north and south. To meet its requirements the commission pro-posed to take approximately 70 acres of defendants' lands, and it was undisputed that such taking would also inflict damage upon the remaining 392 acres of defendants' lands. The parties were unable to agree upon the compensation to be paid defend-ants as a result of the taking and on May 17, 1967, the commission filed its complaint for condemnation. On June 2, 1967, the commission also obtained an order of the court authorizing it to enter upon and take possession of the lands described in its complaint.

In the meantime the defendants on May 15, 1967, entered into a contract for deed with third parties whereby defendants upon performance of the terms and conditions of the contract were to convey to the pur-chasers approximately 62 acres of their land comprised of portions of the northeast, southeast, and southwest quadrants formed by construction of the interchange and lying immediately adjacent to the commission's right-of-way. The contract, inter alia, fix-ed the sales price at $200 per acre; pro-vided for a down payment of $1,000 and payment of the balance in three equal an-nual installments; and recited that "Pur-chasers intend to utilize the premises for business purposes dependent upon highway traffic, and in the event that the route of Interstate 80 highway is relocated to the extent that Sellers cannot convey to Pur-chasers real property substantially conform-ing in shape, size, and proximity to Inter-state 80 highway as relocated and the Urie-Carter highway and the interchange con-necting said highways, then this agreement shall be cancelled and Sellers shall refund to Purchasers all payments on the purchase price theretofore made, except for $1,000.00 which Sellers may retain for their efforts

and expenditures in connection with this sale." In the trial of the case on the ultimate issue of just compensation, it was the theory of the commission that defendants had received benefits under the contract which under the provisions of § 1–775, W.S. 1957, could be offset against damages for defendants' lands not taken. However, when it sought to introduce testimony in support of its theory opposing counsel objected on the ground that any benefits which defendants received occurred "prior to the condemnation proceeding" and the testimony was therefore incompetent, irrelevant, and immaterial. In ruling on the matter, the trial judge first suggested that no proper foundation had been laid and then after further colloquy between counsel and the court and an offer of proof by counsel for the commission, the trial judge, although recognizing the commission's right, said the court "does not believe that plaintiff's contemplated method of proof is proper and therefore will sustain defendants' motion [objection] to disallow this line of testimony."

As a result of the ruling the matter of just compensation was submitted to the jury on the basis of the value of the lands taken and the amount of damage to the lands not taken. The jury returned its verdict fixing the value of the lands taken in the sum of $13,900 and damage to the lands not taken in the sum of $17,000, or a total of $30,900. Thereafter the court entered its order and judgment confirming the award and verdict of the jury and this appeal by the commission followed.

The principal claim of error advanced by the commission is the trial judge's ruling excluding the evidence proffered by the commission in support of its theory.

The statutes pertinent to the problem presented, which initially applied to condemnation proceedings for railroads but were made applicable to proceedings brought by

the commission, § 24–37(A), W.S.1957, C. 1967, are as follows:

*Section 1–775, W.S.1957*

"In estimating the compensation for all property actually taken, the true value thereof, at the time of the appraisement, shall be allowed and awarded; and in estimating the compensation for damages occasioned to other portions of the claimant's property, not actually taken, the value of the benefits, or advantages, if any, to such other lands may be deducted therefrom."

*Section 1–776, W.S.1957*

"The certificate of the commissioners, or the verdict of the jury, as the case may be, shall set forth:

"First—An accurate description of the land taken;

"Second—The value of the land or property actually taken;

"Third—The damages, if any, to the land affected, but not taken, after deducting therefrom the value of the real benefits or advantages which may accrue to such land from the construction of said railroad."

The important and critical question on this appeal, as we view it, is whether or not because of the unique and special circumstances pertaining to the contract for deed the subject lands of the contract were on June 2, 1967,[1] the claimants' [defendants'] property" within the meaning of the statute against which the value of "benefits, or advantages" could be offset.

With respect to this the commission, as stated above, takes the position that the lands in question were "claimants' property" and in support of its contention points out that title had not passed at the time of taking and that the contract was executory. On the other hand, it was contended by the defendants that the contract was not executory because the condition subsequent in

---

1. The amount of just compensation to the claimant ordinarily is to be determined at the date of the taking, State Highway Commission v. Triangle Development Co., Wyo., 369 P.2d 864, 871, rehearing denied 371 P.2d 408.

paragraph 4 had been met by the commission's commitment; that the parties were irretrievably bound to the terms and conditions of the contract at the time of the taking; that talk of the contract being executory and of the passing of title was "of no significance whatsoever"; and that the subject lands were not the "claimants' property" to which the statute applied. As is apparent, the contentions present a question of law and unfortunately neither of the parties, in the trial court or here, developed their arguments beyond the "bare bones" statements of their respective positions. That no doubt compounded the difficulty with which the trial court was confronted, and likewise the arguments are of little assistance here. Solution of the question is not quite that simple. Nevertheless, because we have concluded that the order and judgment of the trial court must be reversed and the case remanded for new trial and because of the importance of the question in the conduct of the new trial should that occur, we feel impelled to express our views on this narrow question.

There can be little doubt, as a general proposition, that the contract here was executory. In 8A, Thompson on Real Property, § 4441, pp. 249–250 (1963 Repl.), it is said:

"An 'executed contract' is one where nothing remains to be done by either party, while an 'executory contract' is one where something remains to be done by one or more of the parties. * * *

" * * * A contract for the sale of land is wholly executory until the conveyance is made, * * * "

and at p. 255: "A contract to sell land on the instalment plan is a contract to sell, not a sale." Even though, as defendants argue, the condition subsequent of paragraph 4 was met, there remained several conditions precedent in the contract that were not shown to have been met on June 2, 1967. For example, the description of the subject lands was by metes and bounds with the proviso that upon execution of the agreement the parties "forthwith" would engage a licensed surveyor to survey the premises and thereupon "the acreage and the description of said boundaries as taken from such survey shall be final, conclusive, and binding on all parties." A warranty deed conveying title to the premises ascertained and fixed by the survey was to be placed in escrow and the escrow closed not later than the second Monday following the survey "or such other time as may be agreed by the parties," and the deed was to be delivered to purchasers upon payment in full of the purchase price. Also, an abstract of title was to be furnished by the defendants to the purchasers within 30 days following the survey. Lastly, the purchasers were not granted the right to "enter into possession" of the premises until the escrow had been closed. Thus it is clear that on the date of the taking the contract was executory, Board of Commissioners of County of Madison v. Midwest Associates, Inc., Ind.App., 245 N.E.2d 853, 855. Nevertheless, the fact that the contract was executory and legal title had not passed is not controlling.

Under certain circumstances and for many purposes resort is had to the doctrine of equitable conversion, and while the defendants have not directly said they rely on the doctrine it is clear from their argument that they do by insisting that defendants were not the owners of the property on June 2, 1967. In Olds v. Little Horse Creek Cattle Co., 22 Wyo. 336, 140 P. 1004, 1008, this court had occasion to consider the doctrine and it was discussed at some length by Justice Potter. Among other things, it was said:

"But under the rule in equity aforesaid defining the position of the parties to a contract for the sale of land, while the vendee is spoken of as the equitable owner of the land, and the vendor as the owner of the purchase money, and trustee of the land or the title for the purchaser, the vendee does not have the complete equitable title, for he is trustee of the purchase money, and his estate is subject to

the equitable interest of the vendor usually referred to as a charge or lien upon the property for the unpaid purchase money. And he does not acquire a complete equitable title until upon paying the purchase money and complying with the other conditions precedent he has become entitled to a conveyance."

The doctrine under varying circumstances found its way into condemnation cases, Hill v. Doerfler, 150 Or. 628, 47 P.2d 260; Brigham City v. Chase, 30 Utah 410, 85 P. 436; Annotation 46 A.L.R. 818; 2 Nichols, Eminent Domain, § 5.21(1), pp. 38–39 (3d Ed.). None of the authorities coming to our attention, however, dealt directly with the special circumstances presented here.

Nonetheless, it is well settled that the word "property" as contained in the Fifth Amendment to the Constitution of the United States, in § 33, Art. I, of the Wyoming Constitution, and in § 1–775, for which an owner must receive "just compensation" when taken or damaged by a condemnor, "is treated as a word of most general import and is liberally construed," 2 Nichols, supra, § 5.1(1), p. 4. It "is addressed to every sort of interest the citizen may possess," United States v. General Motors Corporation, 323 U.S. 373, 65 S.Ct. 357, 359, 89 L.Ed. 311, 156 A.L.R. 390; and there is nothing to indicate that the legislature, in providing the right of setoff for benefits, used the word "property" in any different sense. That being true, a further pronouncement in Olds, supra, even though made in disposing of a question of taxation and about which there is a lack of unanimity in other jurisdictions, is rather decisive of the question here. Immediately following the above quotation concerning the status of a vendor and vendee and the trustee relationship, it was said:

" * * * Nor is the vendor prior to the full payment of the purchase price a mere trustee. He is such trustee subject to the performance of the vendee's obligations, and until those obligations are

performed the vendor not only holds the legal title but has a substantial interest in the property. * * * * "

This was then followed by the conclusionary statement, 149 P. at 1009, that:

"Therefore, if the state occupies no better position than that of a vendor under an ordinary contract of sale, *it has an interest in the land, and that interest clearly is property* within the meaning of the provision of the Constitution exempting the property of the state from taxation, and the exemption certainly prevents the taxation of the land in such a manner as to include or imperil that interest. * * * * " (Emphasis supplied.)

We see no reason why we should not apply the rationale of the foregoing to the circumstances here, particularly when it was not shown that the purchasers were in possession. To do so works no injustice upon the defendants. Should the jury determine that the value of the subject lands had been enhanced by the construction of the interchange, the defendants rather than the purchasers are the recipients of that enhancement. Thus we hold the defendants did have such an interest in the lands subject to the contract that the value of the "benefits, or advantages," if any, could be offset against any severance damages to the defendants' property. We would caution, however, that this holding goes no further than to meet the unique and special circumstances presented by this case.

Turning now to the exclusionary ruling of the trial court to the commission's proffered evidence under its theory that the defendants received benefits or advantages from the proposed project, it is somewhat surprising that this court has not heretofore had occasion to consider this difficult, complex, and often confusing problem as reflected by the vast amount of litigation dealing with it. Much of the litigation has had to do with whether or not a claimed benefit was "general" or "special" and whether either or both could be used as a setoff to the value of the property taken or only to severance damages. It is not

clear whether the term "benefits, or advantages" was used by the legislature in § 1-775 in a restrictive sense as embracing only special benefits or in the broader sense of both general and special benefits. The statute was initially enacted in territorial days and has not since been amended.

■■■ The prevailing rule today, however, whether by statute or otherwise, is to limit the setoff to special benefits, 3 Nichols, Eminent Domain, § 8.6204(2), p. 84 (3d Ed.); Annotation 13 A.L.R.3d 1149, 1160. Nevertheless, for purposes here we need not decide the point and neither is a discussion in depth of what constitutes "benefits, or advantages" within the meaning of the statute deemed necessary. It is clear that the statute embraces special benefits, which is the question before us, and such benefits have been variously defined but generally as "those which arise from the peculiar relation of the land in question to the public improvement," 3 Nichols, supra, § 8.6203, p. 66; see also Annotation 13 A.L.R.3d 1149, 1168. It is also generally recognized that if the land not taken is enhanced in value for the reason that the improvement makes it desirable and available for a higher and better use than for farming, for example, a special benefit may result, State v. Smith, 237 Ind. 72, 143 N.E.2d 666, 670. In the case now before us both parties proceeded on the basis that the highest and best use of defendants' property prior to the improvement was for agricultural purposes. More specifically, where as here a traffic interchange is constructed upon the land taken and quadrants are created out of an owner's land not taken but adjacent to or in close proximity to the "ramps" of the interchange with the result that such property may be enhanced in value because its highest and best use is "immediately favorably changed or its potential for favorable change in use appears by reasonable probability to be imminent" such land is "specially benefited," Petkus v. State Highway Commission, 24 Wis.2d 643, 130 N.W.2d 253, 255–256; see also Alden v. Commonwealth, 351 Mass. 83, 217 N.E.2d 743, 746, and Brookside Mills,

Inc. v. Moulton, 55 Tenn.App. 643, 404 S.W.2d 258, 263. In the Alden case it was said that in the absence of special circumstances such fact "even without supporting testimony, strongly suggests enhancement in value." Other courts have said that where the construction of the highway is new, special benefits will be presumed, State ex rel. State Highway Commission v. Vorhof-Duenke Company, Mo., 366 S.W. 2d 329, 337; Selbee v. Multnomah County, 247 Or. 390, 430 P.2d 561, 562. The existence and extent of a special benefit, however, ordinarily are questions of fact for the jury, State ex rel. State Highway Commission v. Vorhof-Duenke Company, supra; Selbee v. Multnomah County, supra; and Hietpas v. State, 24 Wis.2d 650, 130 N.W.2d 248, 251. The burden is on the commission to prove the value of special benefits, Annotation 13 A.L.R.3d 1149, 1218.

In the instant case it is clear that the commission's theory of special benefits offsetting the amount of severance damages was premised upon the foregoing concepts and if its method of proof was proper it was entitled to have its theory presented to the jury.

In giving consideration to that question some additional background is indicated. With respect to the "before value" of the defendants' lands the witnesses for the defendants gave it as their opinions that defendants' lands were of the value of $200 per acre throughout. Although Porter Rollins, a defendant, testified as to the use of a portion of the lands by acreage, we have been unable to reconcile those figures with the total of the acreage remaining after the taking. The defendants did, however, put in evidence a general classification made by the Soil Conservation Service in which the lands were described as "hay land," "range land," and "clayey F. C." Here again we are uncertain as to the acreage so classified but as nearly as can be determined on defendants' position that it owned only 336 acres at the time of taking, 135 acres thereof were classified as hay land and 201 acres were classified as range or clayey land. On the other hand, the witnesses for the

commission in general used a more specific classification but for purposes here we need only refer to the testimony of the witness Elroy Melberg, through whom the commission undertook to prove benefits. In arriving at his "before value" the witness classified and valued the lands as follows:

| | | | | |
|---|---|---|---|---|
| Irrigated cropland | 110.0 acres @ | $150 | $16,500 |
| Grazing land | 204.6 acres @ | 25 | 5,115 |
| Irrigated pasture | 129.0 acres @ | 150 | 19,350 |
| Subirrigated land | 18.4 acres @ | 120 | 2,208 |
| Total | 462.0 acres | | $43,173 |

Such method of appraising is well recognized and has been approved by the courts, Wilson v. United States, 10 Cir., 350 F.2d 901, 904. He then gave it as his opinion that the value of the lands taken was in the sum of $4,712.50 and severance damages to the lands not taken in the sum of $9,649. It was at this point in his direct testimony that he was asked concerning his familiarity with the contract for deed which involved portions of the northeast, southeast, and southwest quadrants described above and answered that he was. He was then asked if in his opinion the defendants had received benefits from the proposed construction and again he answered, "yes." Thereupon the objection, also related above, was made by the defendants, and the judge, apparently on the basis that no sufficient foundation had been laid, struck the answer. The commission's offer of proof then followed, and while it was not without some imperfection it was sufficiently explicit to advise the trial judge of the nature of the evidence and the method the witness proposed to follow in arriving at an enhanced value of the lands subject to the contract. The relevancy and the materiality of the proffered evidence were apparent at the time. See State Highway Commission of Wyoming v. Joe Miller Land Company, Wyo., 467 P.2d 450, 453. Had the witness been permitted to testify he would have given it as his opinion on the basis of the price of $200 per acre fixed by the contract that the immediate conversion of the farmlands to commercial purposes increased the value of such lands in the sum of $8,072.50, which he proposed to use as an offset to defendants' severance damages. It is interesting to note that of this amount $6,787 was attributable to grazing land, which he valued a $25 per acre in arriving at his "before value," and other than the general testimony of the defendants' witnesses that all of the defendants' lands were of a value of $200 per acre, such testimony stood unchallenged.

■ From the brief general comment made by the trial judge at the time of his ruling excluding the proffered testimony of the witness Melberg on the basis of the "contemplated method of proof" being improper, we are not apprised of the reasons underlying the ruling. If it was on the basis that the contract was not competent evidence on the issue of the claimed special benefits we think it was an erroneous ruling.

While we have held that an offer to purchase is not admissible on the question of market value in this type of proceeding, State Highway Commission v. Triangle Development Co., Wyo., 369 P.2d 864, rehearing denied 371 P.2d 408, we did not reach the problem of the admissibility of an executed contract for deed entered into by the condemnee with third parties for sale of land involved in and directly affected by the proceeding. Unless the contract is remote in time, however, there is ample authority holding that such a contract is admissible on the issue of value, Annotation 155 A.L.R. 253. The primary reason for the rule when the contract is offered

by the condemnor is that although not conclusive on the issue of value it constitutes an admission against interest of some persuasive force and, of course, value is an integral part of the proof with respect to special benefits. In fact, it seems the trial judge recognized admissibility of the contract on the ultimate question of "before value" inasmuch as it was received in evidence and used by the commission for purposes of cross-examination of the defendant Porter Rollins and defendants' motion to strike the exhibit made during the arguments pertaining to special benefits was denied. If the witness Melberg was content for purposes of his opinion to measure the amount of claimed enhanced value to the lands in question by the price fixed in the contract, we think he was privileged to do so and the weight of his opinion was a question for the jury.

The only other basis for the ruling that suggests itself to us was that the trial judge may have thought the contract was not competent or relevant evidence on the issue of whether or not such lands, as a result of the proposed construction of the interchange, had thereupon been transformed from use as farmlands to a higher and better use. We fail to see where that might be so. Concededly, proof thereof cannot be speculative or remote. Nevertheless, the contract itself, while not conclusive, was some evidence tending to prove that a transformation had taken place. In addition, the contract tended to corroborate the proffered opinion of the witness Melberg that defendants had received special benefits because of such a transformation. As we view it, there was sufficient in the record at the time the exclusionary ruling of the trial court was made to forestall a ruling as a matter of law that the opinion of the witness was based on speculation and remoteness, and sufficient was shown from which the jury could have drawn the inference that special benefits had accrued to defendants' property.

In conclusion we hold that the method of proof pursued by the commission in support of its theory that the defendants had received special benefits was not improper for the reasons stated and the exclusionary ruling of the trial court was erroneous and prejudicial.

Consequently the order and judgment of the trial court is reversed and the case remanded for new trial.

Reversed and remanded.